## No. 15,969.

### DeFeo *v.* Smith et al.
(203 P. [2d] 485)

Decided February 7, 1949. Rehearing denied March 7, 1949.

Mr. John J. Morrissey, for plaintiff in error.

Messrs. McDougal & Oakes, for defendants in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

ACTION was brought by DeFeo for specific performance of the following contract executed by Wright on November 17, 1939:

"The undersigned owner of undivided ⅔ of W. 65 feet of Lots 30, 31, 32, 33, and 34, and 35, Wheeler's Resubdivision of Part of Lot 2, and all of 3 and 4, Block 3, H. Witters North Denver Addition, known as 1908-10 & 12 W. 33rd Ave., Denver, Colo. agrees to sell same to John DeFeo for $1000.00 subject to 1st deed of trust for $1000.00 due in one year and second deed of trust in six months for $360.00, and all general and Moffat Taxes and personal. Abstract of title to be furnished to date showing merchantable title as above stated and deal to be closed immediately upon examination of title. There are specifically the following other bills against personal property in the place to be paid by John Defeo, Neon sign, $50.00; abstract $40.55; stove in kitchen belongs to the undersigned and is to be removed, all other fixtures and utensils to be clear.

"Received $5.00 to bind bargain. $95.00 to be paid A. M. November 17, 1939.

"Bal. $900.00 when deed is delivered.

(Sgd.) "Richard Wright,<br>2516 W. 25th Ave."

The contract was immediately recorded by DeFeo.

Some two years thereafter, by deed recorded October 9, 1941, Wright conveyed his two-thirds interest to defendant Stella Smith, and by deed recorded October 16, 1942, Smith conveyed to defendant McDougal. Amended complaint in this action was filed and McDougal was joined as party defendant on May 4, 1946. Other issues were involved before the trial court, but the sole matter brought here for review is the action of the trial court in denying specific performance of the contract.

There is little substantial dispute in the evidence as to essential facts. DeFeo was the owner of a one-third interest in the property; John J. Morrissey was his attorney. Wright went to Morrissey's office seeking to sell his interest to DeFeo. Morrissey obtained the abstract which had been extended to September 18 of that year. That abstract then disclosed of record against Wright's interest a judgment lien held by the United States of America of $1,872.25, which had been recorded in August of that year, and other liens and encumbrances in addition to those mentioned in the contract, and there was in fact still another deed of trust securing payment of $1,000.00 executed and recorded subsequent to the date of the extension of the abstract. Wright testified that at the time Morrissey prepared the contract he told Morrissey that he would take $1,000.00 clear above all debts, and that Morrissey had the abstract on the table at the time the contract was signed. Morrissey did not testify as to Wright's offer or instructions with regard to preparation of the contract or anything that was said between them; his sole testimony with regard to Wright's offer was by answering the question, "Does that contract embody the terms and conditions that Mr. Wright agreed on at the time it was signed by him?" "Yes, sir." Wright testified that he did not know of the judgment lien, and Morrissey testified that he did not know of it at the time he prepared the contract, although he had the abstract in his possession, and did not know whether he had examined the title before getting the abstract. In any event, the result was that, under the contract signed by Wright, he obligated himself immediately to discharge encumbrances amounting to nearly three thousand dollars more than he was to receive, for the privilege of making conveyance of his two-thirds interest in the property,—an agreement that no man in his senses would knowingly sign. That he did not understand the contract which he signed, is further evidenced by the fact that a few days later he went to Morrissey's

office, tendered a deed, and made demand for the $900.00 balance of the purchase price. Morrissey testified that when such demand was made he told Wright "There are other liens and another mortgage against it; when you clear that up I will pay the money," and that Wright "never came back." Thus the matter stood without further action by either party, for several years, although there was testimony as to subsequent negotiations for purchase and sale of their respective interests between Wright and DeFeo. There is no evidence, other than hearsay, that DeFeo ever even made tender of the $900.00 balance due under his purported contract before bringing suit or that he at any time called on Wright to perform.

Defendant McDougal, who is an attorney at law, prepared the papers two years later for transfer of Wright's two-thirds interest to defendant Smith, and testified that he did not examine the title at that time, nor even a year later, apparently, when he purchased from defendant Smith. He testified that the first he knew of the DeFeo contract was in November 1944 when Wright brought it in to him. Wright testified that he did not mention it before; that he just figured it was off because Mr. Morrisey would not go through with the deal.

Several years after the date of the contract, the grantees of Wright's two-thirds interest, by application of increased rentals received from the property and personal advancement of monies, made compromise of the judgment, mortgages and tax liens against the property, and then, only, this action was brought. A real-estate broker testified that in 1939, at the time the contract was made, the property was worth from $5,000.00 to $5,500.00 and that at the time of trial it was probably worth $12,000.00 or $12,500.00.

It is hornbook law that specific performance is not a matter of right, but rests in the sound discretion of the court, and that equity will not enforce the extraordinary remedy unless the contract be fair, equal and

just in its terms, the consideration not grossly inadequate and the remedy not inequitable, unconscionable or oppressive, *Rinderle v. Morse,* 27 Colo. App. 457, 150 Pac. 245 (Affirmed, *Morse v. Rinderle,* 64 Colo. 32, 169 Pac. 648), and that on review all questions of fact must be resolved in favor of the judgment. *Pestal v. O'Donnell,* 81 Colo. 202, 254 Pac. 764.

It is the further recognized rule that when time is material, "If the vendee has suffered a considerable time to elapse without any steps to enforce, so that it may fairly be inferred that he has abandoned his rights, and in the meantime the title has passed from the vendor to devisees or purchasers, the vendee will not be permitted to interfere with and defeat the rights of these third persons by obtaining a decree for the enforcement of the agreement against them, or against the land which has come into their ownership," (Pomeroy's Specific Performance of Contracts [3d ed.], p. 868, §408); that where the plaintiff has delayed performance of his contract for speculative reasons, specific performance will be denied, and that a marked rise in the value of the land during the interval will always be a fact of much weight in tending to show that the vendee's delay was speculative and for the very purpose of awaiting such a turn favorable to himself. Pomeroy, supra, p. 864 § 407; *White v. Greenamyre,* 77 Colo. 33, 234 Pac. 164; *Bower v. Pound,* 68 Colo. 457, 190 Pac. 425.

There is abundant and substantial evidence to support the judgment of the trial court: Evidence that the contract was not fair, equal and just; that the consideration was grossly inadequate; that while the contract contemplated prompt performance, the long inaction and unreasonable delay of the purchaser and his failure and that of his attorney to mention the contract to DeFeo's grantees in connection with their purchase or in connection with their subsequent efforts at satisfying the encumbrances against the property, made the remedy of specific performance inequitable, and consti-

tuted laches; that such delay, for some six years, until the encumbrances were paid off by subsequent purchasers and the value of the property had more than doubled, sufficiently evidenced an intent on the part of plaintiff to hold the contract in order that he might speculate upon the chances of its proving to be an advantageous bargain.

Accordingly, the judgment is affirmed.

Mr. Chief Justice Hilliard dissents.