No. 17,214.

MCDERMOTT, ADMINISTRATOR ET AL. *v.* BENT COUNTY COLORADO IRRIGATION DISTRICT ET AL.
(272 P. [2d] 995)

Decided July 6, 1954.   Rehearing denied August 16, 1954.

Mr. C. E. SNYDER, Mr. RICHARD McDERMOTT, Messrs. THULEMEYER & STEWART, for plaintiffs in error.

Mr. AVERILL C. JOHNSON, Mr. OAKLEY WADE, Mr. ARTHUR C. GORDON, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

WE designate the parties as in the court below where the petitioner, R. B. McDermott, administrator d.b.n. of the estate of John D. Brown, deceased; D. D. Amis and C. N. Troup were claimants. The Bent County Colorado Irrigation District, George E. O'Brien, Gerald G. O'Brien, Samuel R. Judd, Bessie Marie Judd, Grover Swift, A. D. Baker, Charles Berekebile, Robert T. Whiting, T. J. Wilson, and the heirs of Conrad Zeiler, who appeared in the court below as respondents, will be referred to as respondents.

R. B. McDermott, administrator, c.t.a. of the estate of John D. Brown, deceased, initiated this proceeding in June, 1950 by filing a petition in the district court. He alleged that the Bent County Colorado Irrigation District had been adjudicated by decree of the district court within and for Bent county, Colorado, dated December 19, 1932 to be indebted to the estate of John D. Brown in the sum of $14,123.60, together with interest; that it was the duty of the board of directors of the district to certify a levy to the county commissioners of Bent county to pay the indebtedness of the district; that the district had failed to pay its indebtedness and that the

county commissioners had not made a levy for its payment; that the district had no board of directors, and that it had been inactive for more than five years prior to the commencement of this proceeding, and that the district had failed to transact any business for which it was organized during said period of more than five years.

Petitioner prayed that the court ascertain the amount of the indebtedness of the district, and that said indebtedness be ordered paid. Issue was joined on the petition.

On December 11, 1951 Grover Swift as a landowner in the Bent County Colorado Irrigation District, filed a petition in Bent county district court alleging that the district was without a board of directors, and praying for the appointment of such a board by the court. A hearing was had on this petition on February 19, 1952 at which time the trial court consolidated the Swift case with the instant proceeding and subsequently the court appointed a board of directors.

The instant proceeding was heard by the trial court on February 25 and 26, 1952. In May, 1953 the trial judge in his findings of fact and conclusions of law, determined inter alia that the petitioner and intervening claimants were barred by their own laches from enforcing their asserted claims against the respondents or the land involved in this proceeding, and entered judgment dismissing the claims of petitioner and the intervening claimants. From the judgment so entered, petitioners bring the cause here by writ of error.

The organization of the Bent County Colorado Irrigation District was commenced in 1928 and completed in 1932 and a bond issue of $600,000 was authorized. The district took over the assets of the Mutual Carey Land and Reservoir Company, a previously organized district, and assumed its predecessor's liabilities. It was claimed that among the obligations so assumed were the claims of the John D. Brown estate for work, labor and services performed in 1919 and 1920, more than thirty years prior

to the commencement of the instant proceeding. The claims of the intervening claimants were one in favor of Carey N. Troup for services rendered by the Las Animas Warehouse Company prior to 1928, and that of D. D. Amis was based on a claim for legal services allegedly performed by Denver lawyers in connection with the bond issue above mentioned and the organization of the district which was completed in 1932.

It is admitted that from December 19, 1932 to a date just a few weeks prior to the commencement of this proceeding, none of the petitioners made any effort to collect on their alleged claims, and that there was nothing of record in Bent county, Colorado, which gave notice of said claims. It is also conceded that the district remained active until some date in 1945.

The district comprised some 24,000 acres of land. The trial court found that in 1937 a special assessment was made against lands in the district to pay indebtedness of the district. Whether the amount realized thereon was sufficient to discharge this indebtedness does not appear from the record. Of the 24,000 acres of land in the district, some 6,000 acres were in 1937 owned by the State of Colorado, and the balance was privately owned at the time of the 1937 assessment levy. It appears from the record that more than 14,000 acres of land in the district went to tax sale and deeds were issued thereon. By stipulation of the parties in this proceeding it appears 14,280 acres of this land were the subject of quiet title actions. The decrees quieting title were admitted in evidence and their validity is not here disputed. The district was a party defendant in said quiet-title actions.

Prior to 1932, when interested parties desired to form the Bent County Colorado Irrigation District, certain proceedings were had which culminated in a district court decree in December, 1932, which, petitioners assert, purported to determine the indebtedness of the district to November 1, 1930. Among the creditors so listed in the decree were the claims represented in the instant action

by D. D. Amis; that of the Las Animas Warehouse Co., and that of the John D. Brown estate. By this decree a proposed bond issue in the sum of $600,000 to be issued by the district was approved. Apparently the several creditors of the district named in this 1932 .decree proposed to accept in lieu of cash settlement "bonds of the district dated November 1, 1929 at the rate of one dollar ($1.00) in principal of bonds for eighty cents (80¢) in claims." These bonds were never issued. The December 1932 district court order or decree was not recorded in the office of the clerk and recorder of Bent county until April 19, 1950, approximately two months before the instant proceeding was commenced.

The several answers filed by respondents who appeared in the proceeding set up the following defenses: Denial of the debt, want of jurisdiction, laches, estoppel, rights of bona fide purchasers of land in the district, statutes of limitation, and that in 1937 a levy of $3.92 per acre had been made against the land in the district for the purpose of paying its indebtedness.

It is urged by counsel that the trial court erred in applying the doctrine of laches in the instant proceeding. It is contended that this was a special proceeding and that the equitable defense of laches did not apply. In this contention counsel for petitioners are inconsistent, for by their amended petition they attempted to set forth a claim that petitioners were equitable bondholders. It is evident from the record that throughout the trial of this case counsel for plaintiffs in error endeavored to convince the judge that even though no bonds were issued by the district, nevertheless the claimants represented by them were "equitable bondholders."

We direct attention to the case of *Buell v. County Court of Jefferson County*, 175 Ore. 402, 152 P. (2d) 578, which we believe is in point. There, a creditor of an irrigation district brought an action in the nature of mandamus to require the imposition of levies to pay his claim. Plaintiff owned $1,400 of a total of $3,000 bonds

with a maturity date of 1928. He also owned certain outstanding registered warrants of the district, the most recent thereof being dated in 1927. In Oregon there were legal proceedings, equitable actions and special proceedings, and mandamus under the Oregon law was classified as a special proceeding. The Buell case, supra, was initiated in 1941. The Supreme Court of Oregon reversed the trial court, which had ordered the issuance of a peremptory writ of mandamus, and remanded the case with directions to enter judgment in favor of defendant on the ground that plaintiff's laches barred his recovery. The court said: "In our opinion, this proceeding was not seasonably brought, and the delay has been detrimental and prejudicial to the rights of private owners of land in the irrigation district."

In the Oregon case the delay was approximately thirteen years; in the instant case the delay ranges from nineteen to thirty years. In the Oregon case the so-called creditor held bonds, warrants and written evidence of indebtedness; here we have little of any kind of evidence to substantiate the claims. In the Oregon case no levy had been made to pay the particular indebtedness; here there is strong evidence that a special tax levy was made to pay legitimate claims against the district.

It does not follow that irrespective of the legal or equitable rights of the petitioners that those rights will be enforced without considering the effect such enforcement will have in promoting justice. See, 30 C.J.S. 549, 550; *El Camino Land Corporation v. Board of Supervisors of Tehama County*, 43 Cal. App. (2d) 351, 110 P. (2d) 1076; *Snower v. Hope Drainage District*, 2 Fed. Supp. 931; *Farrow v. Eldred Drainage and Levee District*, 359 Ill. 347, 194 N.E. 515.

The trial court based its ruling on the doctrine of laches, and counsel for defendants in error contend that the trial court should have also declared as a matter of law, that petitioners' claims have heretofore been barred by decree in quiet-title suits involving some

14,280 acres of land in the district, and that with respect to the lands and water rights sold at tax sales upon which deeds were issued to purchasers at the sale, which titles were confirmed and approved by decrees quieting title to such lands, that no charge or levy may now be imposed to pay a claim antedating such tax sale. In view of the record as here made, disclosing apparently valid decrees quieting title to these lands, we are of the opinion that petitioners are in no position to now urge, through this proceeding, that they have claims presently enforceable against these lands. When the treasurer issued his tax deed in conformity with law, he initiated a new title to the lands so conveyed. The former title is wiped out and a fortiori former liens and charges on such lands are removed. The decrees quieting title had been of record for more than five years prior to the commencement of the instant proceeding.

In *Calvat v. Juhan,* 119 Colo. 561, 206 P. (2d) 600, after stating that in order to make the defense of laches available "prejudice must be shown,". we quoted from *Gibbons v. Hoag,* 95 Ill. 45, 67, as follows: "The claim that appellee has been guilty of laches which should bar her right is destitute of merit. Mere delay alone, short of the period fixed as a bar by the statute of limitations, will not preclude the assertion of an equitable right. It is only when by delay, and neglect to assert a right, the adverse party is lulled into doing that which he would not have done, or into omitting to do that which he would have done, in reference to the property, had the right been promptly asserted, that the defense of laches can be considered. There is no pretence of any prejudice resulting to appellants by reason of the nonaction of appellee, in any respect."

It is not in the interest of the public good to enforce such ancient claims after so many years have elapsed, and after so many complications have arisen, unless some very good reason is given for the delay. Here, we have no attempt to assign a reason.

It cannot be said that the order of the district court under date of December 19, 1932 amounted to a judgment in favor of claimants against the district. What the court did in this proceeding was to decree that the organization of the district and the proceedings incident thereto were "in all respects legal, valid and done, taken and performed in accordance with the laws of the State of Colorado." This is not a judgment for the payment of money. It must also be remembered that a transcript of this order was not filed of record in Bent county until April, 1950, just prior to the commencement of the instant proceeding. Meanwhile, titles had changed hands, tax sales had been held, tax deeds were issued, quiet-title decrees were entered, and the owners of these lands were not advised actually or constructively of any demands by these claimants.

The judgment is affirmed.