## No. 17,945.

R. B. McDermott, Administrator, etc. et al. *v.*
The Bent County, Colorado, Irrigation District.
(308 P. [2d] 603)

Decided March 11, 1957.  Rehearing denied April 1, 1957.

Messrs. THULEMEYER & STEWART, Mr. RICHARD MCDER-
MOTT, for plaintiffs in error.

Mr. ARTHUR C. GORDON, Mr. OAKLEY WADE, for defend-
ant in error.

*In Department.*

MR. JUSTICE KNAUSS delivered the opinion of the
Court.

FOLLOWING our decision in *McDermott v. Irrigation
District,* 130 Colo. 44, 272 P. (2d) 995 (herein referred to
as the "first case") the Bent County, Colorado Irrigation
District published notice to the landowners in the Dis-
trict of a meeting at which it was proposed to rescind
the action taken in September 1928, authorizing the
issuance of bonds of the District. Thereupon plaintiffs
in error, who were plaintiffs in the first case, instituted
the instant action seeking (1) injunctive relief to re-
strain this proposed action of the District, and (2) to
require the District to issue and deliver to plaintiffs in
error bonds of the District claimed to be due them, and
representing the identical indebtedness referred to in the
first case. Several defenses were interposed, of which
we consider but one: i.e. the issues presented here were
determined in the case reported in 130 Colo. 44 and that
determination is res judicata of such issues and con-
clusive in the present action.

The trial court entered judgment for the District in the instant case and plaintiffs are here on writ of error.

Plaintiffs' complaint filed December 28, 1954, alleged that "At the time of the organization of said Irrigation District [defendant] at an election lawfully held, the landowners of said Irrigation District authorized and directed its Board of Directors to issue $600,000.00 negotiable bonds bearing 6% interest of said Irrigation District and further authorized said Board of Directors to pay the above named indebtedness in the authorized bonds of said district at the rate of $1.00 for each 80 cents of such indebtedness." It was then alleged that "in the manner above recited" the bonds were thereby *sold* to the plaintiffs, "but due to the neglect of the officers and directors of said district the said bonds were not issued to said creditors." The complaint further alleged that the defendant district had caused a special election to be called for January 3, 1955, to "consider, to-wit: 1. The rescission of the action of the district heretofore taken authorizing the issuance of bonds." It was further alleged that if such rescission was voted it related only to "*unsold* Bonds in the hands of the Board of Directors." (Emphasis supplied.)

Plaintiffs then prayed (1) for an injunction restraining and enjoining defendant district "and its landowners from taking any action that will result in the rescission of the bonds heretofore authorized by the district that were sold to plaintiffs or either of them for their indebtedness." (2) That the officers of said district be "required to issue and deliver to each of the plaintiffs the bonds heretofore agreed to be issued and delivered to plaintiffs or their predecessors in interest."

In the first case the identical claims mentioned in the instant case were set forth in a petition to the District Court, filed in June 1950, together with the allegations that it was the duty of the directors of the Irrigation District to certify a levy to the Board of County Commissioners to pay the indebtedness due petitioners, that the

district failed to pay its indebtedness and that the county commissioners had not made a tax levy for the payment of the indebtedness. There were other allegations and a prayer that the court ascertain the indebtedness of the district and order it paid. Judgment in that action was for defendant.

▉ That the two actions are identical requires little comment. In the first case the identical claims which form the basis of the instant case were phrased in a demand for a tax levy by the district in order that its debts might be liquidated. In the instant case, the same demand is dressed up as a claim for the issuance of bonds as evidence of, and representing the same indebtedness. No matter how clothed the issue has been decided adversely to plaintiffs in error, for their demand is nothing more than one for the recovery of money, or its equivalent, represented by the bonds. The sufficiency of the pleas interposed by the district is determined by the facts involved in the two cases and not by the appelation plaintiffs choose to apply thereto. The same evidence would sustain both actions and the same defenses would apply. The effect of the judgment in the first case must be ascertained from the records in both cases.

It appears that on January 3, 1955, the landowners voted to rescind the September 29, 1928, action authorizing the issuance of bonds.

The trial court made ample findings, supported by competent evidence, that the claimed indebtedness due plaintiffs was the original obligation of the Mutual Carey Ditch and Reservoir Company, which in October 1929, conveyed its reservoirs, rights-of-way, water rights, etc. to the defendant district "with the latter assuming and agreeing to pay all debts and liabilities of the company." That by decree of the District Court of Bent County, on December 19, 1932, the organization of the defendant district and the action relative to the issuance of bonds were approved. No bonds were ever issued. The trial court determined from competent evidence that in 1937

a special assessment of more than $93,000 was levied by the district to provide funds with which to pay creditors. That a large share of the land was sold to the district for delinquent taxes of 1938, some of which was redeemed,. but that some 14,280 acres of land in the district went to tax deed and subsequently the title thereto was quieted. That there was no activity in the district from 1937 to 1945; that no formal action was taken by plaintiffs until 1950 when they instituted the action which culminated in the decision reported in 130 Colorado. The Court further found that at an annual meeting of the landowners held January 3, 1955, the directors of the district were authorized to sell the district's properties to the Colorado State Game and Fish Commission, and upon the sale being made the district was to be dissolved.

■ As we have said, the bonds of which plaintiffs speak were never issued. Whatever the rights of plaintiffs, they date from December 19, 1932, when the district court approved the formation of the district and of it assuming the debts of its predecessor. At that time no judgment was entered by the court against the district in favor of plaintiffs or their predecessors in interest. From 1932 on plaintiffs remained passive and inactive until 1950 when they sought to establish and collect their claims. Being defeated in the first case they attempted to revive their claims in another form in the year 1954. In the first case they asked that their claims against the district be determined and ordered paid. In the instant case they demand the issuance and delivery to them of bonds to represent the identical indebtedness which this court has held could not be recovered.

As we said in *McDermott v. Irrigation District, supra:* "It is not in the interest of the public good to enforce such ancient claims after so many years have elapsed and after so many complications have arisen * * *."

■ We must conclude that plaintiffs are barred by

the prior adjudication of their alleged claims in *McDermott v. Irrigation District, supra.* The fact that plaintiffs did not demand the issuance of bonds in the first case does not alter the substance or character of their claims in the instant action. We must hold that the judgment in the first case is a bar to the present action. Where judgment on the merits is rendered in favor of a defendant in an action in which a plaintiff may have two or more alternative remedies, such plaintiff cannot thereafter maintain an action to enforce a remedy he did not seek in a former action. Where relief is sought in an action at law and denied, a subsequent action seeking equitable relief on the identical claim cannot be maintained.

▇ In *Smith v. Cowell,* 41 Colo. 178, 92 Pac. 20 it was held that a judgment on the merits concludes the parties, not only as to things determined and actually litigated, but also as to all matters germane to the issue which could or might have been litigated therein. It was also held that a judgment on the merits in an action at law is conclusive in equity. See, also, *Bijou Irrigation District v. Ditch Co.,* 67 Colo. 336, 184 Pac. 382; *Croke v. Farmers Co.,* 71 Colo. 514, 208 Pac. 466; *London v. Allison,* 87 Colo. 27, 284 Pac. 776; *Denver Land Co. v. Moffat Tunnel Improvement District,* 92 Colo. 43, 18 P. (2d) 455; *People ex rel Dunbar v. Maytag,* 129 Colo. 316, 270 P. (2d) 782; *Newby v. Bock,* 120 Colo. 454, 210 P. (2d) 985; *Lane v. Page,* 126 Colo. 560, 251 P. (2d) 1078.

▇ We quote from *People ex rel. v. Maytag, supra:* "Our latest decision on the question of res judicata is *Newby v. Bock,* 120 Colo. 454, 210 P. (2d) 985, wherein is the following: 'The general rule seems to be that if there is identity of subject matter, identity of cause of action, identity of persons to the action, and identity of capacity in the persons for which or against whom the claim is made, that these four identities existing, a prior judgment is conclusive not only as to every question actually presented and decided, but also as to every

question within the issues which might have been presented and determined. Accordingly, the rule announced in *Pomponio v. Larsen, supra,* has been the rule in this jurisdiction from its early history and finds support in many other jurisdictions and recognized texts and encyclopedias [citing cases].' Defendants' plea of res judicata contained in their seventh defense is valid and should have been so held by the trial court."

We are satisfied that plaintiffs had their day in court and that the judgment in the first case is res judicata of the present action. We might also add that claimants may not sleep on their rights for a period of more than nineteen years and then demand relief in a second suit after the same demands were decided adversely to them in prior litigation.

The plea of res judicata being good, the judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE DAY concur.