## No. 18,335.

THE GREELEY AND LOVELAND IRRIGATION COMPANY *v.*
CLARENCE J. McCLOUGHAN, ET AL.
(342 P. [2d] 1045)

Decided August 17, 1959.

174

Messrs. SOUTHARD & SOUTHARD, Mr. WILLIAM R. KELLY, for plaintiff in error.

Messrs. CHILSON & McCREARY, Messrs. CLAYTON & GILBERT, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS action involves the interpretation of a contract for irrigation water between property owners and a ditch company. We will refer to the parties as they appeared in the trial court where defendants in error were plaintiffs and the plaintiff in error was defendant.

The record discloses that on May 21, 1889, Charles P. Scott and Harriet E. Scott, hereinafter called "Scotts," entered into an instrument entitled "Deed of Agreement" with "The Loveland and Greeley Irrigation & Land Com-

pany," a Colorado corporation. The pertinent parts of this Agreement are:

"That the said parties of the first part (Scotts) in consideration of the sum of one ($1.00) Dollar and the covenants hereinafter to be kept and performed by the party of the second part, its successors and assigns, have remised, released, sold, conveyed and quit claimed and by these presents do remise, release, sell, convey and *quit claim* unto the said party of the second part, its successors and assigns forever, all the right, title, interest, claim and demand whatsoever which the said parties of the first part have in and to the following described premises to-wit: The irrigating ditch known as the Barnes Ditch in Larimer County, Colorado, and all their right or claim in and to the use of one hundred and forty (140) inches of water in said Barnes Ditch and especially to a one-fifteenth interest in said Barnes Ditch as originally constructed, which said one-fifteenth interest represented one hundred and forty inches statutory measure. * * * And the said party of the second part hereby covenants and agrees as follows:

"First: The said Company agrees to furnish from the said Barnes Ditch to the said parties of the first part, their heirs or assigns, one hundred and forty (140) inches of water statutory measure, continuously during the irrigating season *except as hereinafter provided,* and to furnish the same in such quantity as may be actually necessary for the use of said parties of the first part, their heirs or assigns, for irrigation of their land and for domestic purposes, *provided, however, that the first parties hereto have not sold or disposed of their one-fifteenth interest at the date hereof and are now the lawful owners of the same.*

* * *

"Fifth: It is hereby distinctly understood by and between the parties hereto that in case the Barnes Ditch shall be unable to carry and distribute equal to at least twenty-one hundred statutory inches either from any

unusual or unforeseen or unavoidable accident or if the volume of water proves insufficient from drouth, or from any other cause beyond the control of said company, the said Company shall not be liable in any manner for the shortness or insufficiency of supply occasioned by any of said causes. It is however agreed that if by reason of any cause the supply of water shall be insufficient to furnish the amount of water required to be furnished to the original owners of the Barnes Ditch, or their heirs or assigns to-wit: twenty-one hundred statutory inches the said Company shall have the right to distribute all the water that may flow through said Barnes Ditch to the said original owners or their assigns pro rata, and to the exclusion of all others, and for the purpose of so doing may establish and enforce such reasonable rules and regulations as it may deem necessary or expedient." (Emphasis supplied.)

Plaintiffs are the successors in interest of the Scotts, and defendant is the successor in interest of The Loveland and Greeley Irrigation & Land Company.

The evidence discloses that for a period of forty-five years preceding the institution of this action, defendant had delivered to the plaintiffs, and their predecessors in interest, one hundred inches of ditch water under the above Deed of Agreement. It is further disclosed that the difference of forty inches has, over the same period of time, been distributed in unknown amounts to some or all of the other holders of rights in the Barnes Ditch, thereby utilizing the full ditch right to 2100 inches, except during those periods when there was insufficient water due to drouth. It further appears that when there was excess water during wet years, defendant company upon request delivered to these plaintiffs more than 100 inches. During drouth periods the ditch was often sectionized in order to give those receiving water an adequate supply and during such periods these plaintiffs would receive no water at all for days at a time until their turn arose under the sectionizing.

In 1950 plaintiff Walno, being disturbed by drouth conditions, made an investigation and discovered the aforesaid Deed of Agreement on record in the County Clerk and Recorder's office of Larimer County, Colorado, and proceeded to make demand upon defendant to deliver the additional forty inches of water, which he claimed to be due to him and his co-owners, in accordance with their proportionate ownership of the contract rights. Until that time Walno stated that he believed he had been receiving all the water to which he was entitled by the Scott agreement. There is no dispute of the fact that defendant company refused to make the demanded deliveries in excess of the hundred inches unless there was excess water in the ditch.

According to testimony before the trial court, the reason for the refusal was that the defendant's business records, which it had inherited from The Loveland and Greeley Irrigation & Land Company, showed that the Scotts had sold, and the other owners under the ditch have been receiving, in unknown amounts per owner, the forty inches of the water in question since at least the beginning of the forty-five year period above mentioned. The record is not clear as to whether the Scott grant of the forty inches was before May 21, 1889, or merely at the beginning of the forty-five year period. In any event, it was for a space of time far in excess of our eighteen year statute of limitation which we need not consider for the reasons hereinafter stated.

From the evidence before it the trial court determined that the correct amount of water due under the Agreement was and is 139.07 inches (instead of 140 inches) and quieted the title of plaintiffs to said water. It ordered the defendant, its agents, employees and servants to make this quantity of water available under the priorities of the Barnes Ditch, as required by the Deed of Agreement.

Motion for new trial was filed and overruled and the

defendant is here by writ of error, urging several grounds for reversal which we summarize as follows:

1. That plaintiffs did not own the forty inches sued for and that the decree exceeds their ownership.

2. Adverse possession by other ditch owners of the water under the three, seven and eighteen years statutes of limitation.

3. That essential co-owners of the other water rights were not represented in the suit, and that it was error to strike defendant's counterclaim for interpleader of such co-owners.

4. That the construction by the parties of the contract for over forty-five years before this controversy arose, should be binding upon plaintiffs.

5. That laches applies in that this is a stale claim asserted after forty-five years of inaction on the part of the plaintiffs and their predecessors in title, and after other ditch owners were lulled into a sense of ownership of the forty inches of water as it has been divided among them for at least forty-five years.

■ Defendant urges that the language of the Agreement is indefinite and ambiguous requiring interpretation by the courts. Assuming this to be true, it is immaterial to the issues framed here because the parties themselves for at least forty-five years have by their conduct interpreted this document. Colorado has long recognized the rule that in construing a contract the courts will follow the construction placed upon it by the parties themselves. *Buckhorn Plaster Co. v. Consolidated Plaster Co.* (1910), 47 Colo. 516, 108 Pac. 27; *New Brantner Ditch Co. v. Kramer* (1914), 57 Colo. 218, 141 Pac. 498.

And, the conduct of the parties acting under a contract before the controversy arose, is a reliable test of their interpretation of the instrument. *Hinkle v. Blinn* (1933), 92 Colo. 302, 19 P. (2d) 1038; *Western Motor Rebuilders, Inc. v. Carlson* (1959), 138 Colo. 404, 335 P. (2d) 273.

■ In Colorado, water rights may be created without a written instrument. *Caldwell v. States* (1931), 89

Colo. 529, 6 P. (2d) 1; *Kountz v. Olson* (1934), 94 Colo. 186, 29 P. (2d) 627.

The fact that this Agreement was of record in Larimer County for many years does not mean *a fortiori* that plaintiffs have an unassailable right to the 140 inches of water mentioned therein. The Scotts quit claimed whatever right they had to the water, and assuming they then owned all of it, they could have, of course, even after that conveyance, deeded or granted away with or without a written instrument all or part of their rights to the same water subject to the Barnes Ditch.

In *Lomas v. Webster* (1942), 109 Colo. 107, 122 P. (2d) 248, it was stated:

"It is well established that individuals in whom a prior right to the use of water is vested may lose such right by acquiescence in an adverse use thereof by another continued uninterruptedly for the statutory period. * * * *"

This rule has been followed in many cases in Colorado including *Allen v. Swadley* (1909), 46 Colo. 544, 105 Pac. 1097; *Hitchens v. Milner Co.* (1919), 65 Colo. 597, 178 Pac. 575; and *Maes v. Willburn* (1928), 85 Colo. 70, 273 Pac. 886.

Here we need not consider the defense of adverse possession, however, for it is clear that the doctrine of laches applies with full vigor. And, this is true even though a *prima facie* record interest in real property is not lost, except by statutory adverse possession, by failure to assert one's rights thereto. See *Michels v. Clemens* (1959), 140 Colo. 82, 342 P. (2d) 693.

The evidence before the trial court was that it was not known whether the Scotts had title to the full 140 inches when the agreement was made, and defendant's uncontroverted business records, as relied upon by defendant, its ditch riders and at least other co-owners of the ditch, for over forty-five years, indicate that the Scotts

had at some time long ago disposed of forty inches of their quit claimed 140 inches of water.

The business records and the testimony as to the practice thereunder were competent evidence.

We must conclude from the record before us that the plaintiffs failed to carry the burden of proof to establish their title to the water in question. As a matter of law the long continued distribution of water in a manner wholly inconsistent with the contract upon which plaintiffs rely, when considered with the evidence of the company's records and oral testimony related thereto, operates to defeat plaintiffs' claim.

Plaintiffs' statement that the business records are not correct, without competent evidence to support such belief, cannot clothe the thought with substance. A mere belief that something is not so is no proof of its non-existence, and does not take the place of proper evidence, where the burden of proof, or the burden of establishing a particular fact, falls upon a litigant.

The Agreement having been of record for many years, these plaintiffs had legal notice of their claimed right to a full 140 inches, and cannot now be heard to disclaim all knowledge of the terms. The strongest right or equity may be abandoned by conduct and no relief can be granted in the face of unreasonable delay. *Duncan,* infra.

In *McDermott v. Bent Irr. Dist.* (1954), 130 Colo. 44, 272 P. (2d) 995, it was stated:

"It is not in the interest of the public good to enforce such ancient claims after so many years have elapsed, and after so many complications have arisen, unless some very good reason is given for the delay."

Actual knowledge of existing conditions or rights is usually a prerequisite to the application of the doctrine of laches urged by a defendant. See 19 Am. Jur. 349, §3504; and *Duncan v. Inv. Co.* (1947), 116 Colo. 12, 178 P. (2d) 428. On the other hand it is also the law that it is not every litigant filing his complaint who is entitled

to relief. For example, a court of equity will refuse to act where in the course of an inexcusable delay, third persons have acquired rights in the subject matter of the controversy which would be injuriously affected by the granting of relief. See cases cited in 30 C.J.S., 542, §118.

Plaintiffs here have pursued their remedy as a quiet title action, but in fact they seek the specific performance of a contract. In this connection the following quotation from *DeFeo v. Smith* (1949), 119 Colo. 296, 203 P. (2d) 485, is applicable:

"It is hornbook law that specific performance is not a matter of right, but rests in the sound discretion of the court, and that equity will not enforce the extraordinary remedy unless the contract be fair, equal and just in its terms, the consideration not grossly inadequate, and the remedy not inequitable, unconscionable or oppressive, * * * ."

81 C.J.S. 446, §19, states:

"The rights of third persons who are not parties to the contract may properly be considered by the court in determining whether the contract should be specifically enforced, even where such rights become vested after the contract is made. Accordingly, specific performance of a contract may be denied where the result of enforcement would be inequitable, harsh, oppressive, unfair, or unjust, as to innocent third persons * * * ."

The users of irrigation water from a common ditch have a substantial and vested interest in maintaining their proportionate share of water from the ditch. This water is the very life blood of the farms affected thereby. It is in reliance upon the continued receipt of it that crops are planted, improvements made, and farm land value created. To upset the balance of distribution, long relied upon here, and deprive some of the users of this ditch of their valuable water rights, especially when it is now unknown from which users the water should be deducted, merely to give initial effect to stale contractual rights between the carrier and one of the users

under a never enforced contract executed in 1889, is harsh and oppressive and certainly unfair and unjust to defendant and the other co-owners of the Barnes Ditch. It therefore constituted error to quiet title to the disputed water in these plaintiffs.

We find it unnecessary to consider other grounds urged for reversal because our consideration of the fifth and sixth points, which are so inextricably intertwined with each other, requires a reversal of the judgment with instructions to dismiss the plaintiffs' complaint.

It is so ordered.

MR. JUSTICE HALL not participating.