## No. 18,494.

W. Clayton Benson, et al. *v.* Martin D. Bottger, et al.
(354 P. [2d] 601)

Decided August 15, 1960.

Mrs. Marjorie Worland Epping, for plaintiffs in error.

Messrs. Tullis, Trott & Johnson, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE KNAUSS.

WE will refer to plaintiffs in error as the Bensons and defendants in error as the Bottgers, and to Ann E. Gehrlein and George S. Gehrlein as the Gehrleins. The latter were not parties to the present action, but were parties in a suit in Larimer County, Colorado, as will hereinafter more fully appear.

The evidence discloses that in September, 1953, the Bottgers began negotiations with the Gehrleins for a trade and exchange of Larimer County properties owned by the Bottgers for property at Deckers, Colorado, upon which the Gehrleins held the leasehold interest and owned the improvements thereon; that during these negotiations the Bottgers were advised by the Gehrleins that the Snow Water Springs Resort Lodge was under lease to the Bensons at an annual rental of $3,000 and that said lease was for a five-year term beginning April 1, 1953; that on October 29, 1953, a trade and exchange agreement was executed by the Bottgers and the Gehrleins under the terms of which Bottgers exchanged the Larimer County property for the lease and property of the Gehrleins at Deckers, then under sublease to the Bensons; that the trade and exchange agreement between the Bottgers and the Gehrleins was consummated on December 1, 1953, at which time the Gehrleins assigned to the Bottgers all of their right, title and interest as Lessors under the aforesaid business lease with the Bensons. At the time of closing a business lease agreement, purporting to be the lease executed on April 1, 1953, between the Gehrleins and the Bensons and calling for an annual rental of $3,000 was displayed to the Bottgers, and a copy thereof delivered to them.

The evidence discloses that following the closing of the Bottger-Gehrlein transaction, a few minor difficulties arose which caused the Bottgers to feel they had not

been treated fairly by the Gehrleins; that during the same period of time the Bottgers were on friendly terms with the lessees in possession, Bensons; that a short time prior to April 1, 1954, Vina M. Bottger during a conversation with W. Clayton Benson, mentioned that the next annual rental payment of $3,000 would soon be due on the Snow Water Springs Resort Lodge; that Benson responded that his lease did not state he owed any more money and that he had recorded his lease in Castle Rock because he felt some trouble might come up; that the lease with the Gehrleins had been recorded and could be inspected at Castle Rock and that it provided for a total rental of $3,000 for the entire five-year term of the lease.

Immediately following the aforesaid conversation between Vina M. Bottger and W. Clayton Benson, the Bottgers examined the records at Castle Rock, Colorado, and found the lease recorded there provided for a total rental of $3,000 for the entire five-year term. The Bottgers felt that a recorded document was "official" and that it had "to be right." Immediately thereafter the Bottgers went to Fort Collins, Colorado, contacted an attorney and placed the matter in his hands; that soon thereafter an action was filed in the district court in the County of Larimer by the Bottgers as Plaintiffs, against Ann E. Gehrlein and George S. Gehrlein, as Defendants, being Civil Action 11544.

The complaint in said Larimer County action alleged the negotiation, execution and consummation of the trade and exchange agreement between the Bottgers and the Gehrleins, stated that the property of the Gehrleins had been materially misrepresented to the Bottgers in that the lease of April 1, 1953, had been represented as providing for an annual rental of $3,000, when in truth and in fact said property was leased for a five-year term at a total rental of $3,000, or the sum of $600 per year. The complaint alleged other misrepresentations on the part of the Gehrleins and prayed that the

Bottgers be restored to their former position by rescission of the trade and exchange agreement, and that the conveyance of the Larimer County property to the Gehrleins be cancelled and held for naught.

After first filing an answer in the Larimer County action, which apparently did not become a part of the record in this case, the Gehrleins sought and obtained permission of the Court to file a Third Party Complaint against the Bensons. The Third Party Complaint against the Bensons recited the substance of the rescission Complaint filed by the Bottgers and in turn alleged that the genuine lease executed on April 1, 1953, provided for an annual rental of $3,000 payable on the 1st day of April of each year and that such lease had been emasculated by the Bensons by the deletion of the provision for $3,000 annual payment in advance. The Third Party Complaint further alleged that the Bensons and each of them were guilty of fraud and wilful deceit by reason of which the Gehrleins had been damaged. The Gehrleins as Third Party Plaintiffs prayed the Court for judgment cancelling and annulling the pretended fraudulent lease, for a judgment requiring the Bensons to pay the sum of $3,000 into the Registry of the Court to be paid to the lawful holders of the genuine lease and for judgment for individual damages to themselves in the amount of $5,000. The Bensons moved to dismiss the Third Party Complaint filed by the Gehrleins.

While the pleadings were in the above state and without a trial on the merits, the Larimer County action was dismissed on February 23, 1955, with prejudice; that the relief sought by the Third Party Plaintiffs, the Gehrleins, against Bensons was not granted. At the time of dismissal of the action both the Bottgers and the Bensons executed a release running to the Gehrleins and the Gehrleins executed releases running to both the Bottgers and the Bensons. *There was no release from the Bottgers to the Bensons or from the Bensons to the Bottgers.*

On October 16, 1956, the present action was filed against the Bensons, and so far as is material to this writ of error, the Bottgers alleged the existence of the business lease dated April 1, 1953, and alleged that such lease provided for rental payments in the amount of $3,000 annually; the Complaint alleged that the Bensons had made no rental payment since the original payment of $3,000 made during the first year, and sought judgment against the Bensons in the amount of $9,000 (3 years rental) with interest.

The Bensons answered the complaint and denied that the rentals under the April 1, 1953, lease were $3,000 per year, but on the contrary asserted that the lease rental was $3,000 for the entire 5-year term of the lease, and that that sum had been paid in full to the Gehrleins.

The Bensons further pleaded the filing of the Larimer County action; the fact that the action was dismissed with prejudice, and asserted that such dismissal constitutes a bar to the present action by application of the doctrine of res adjudicata.

After trial to the court without a jury, the court resolved the issues in favor of the Bottgers, finding that under the terms of the genuine lease dated April 1, 1953, the lease rentals were $3,000 per year and the Bensons were justly indebted to the Bottgers in the sum of $9,000, together with accrued interest, and the court further ruled that the doctrine of res adjudicata did not bar the present action as contended by the Bensons. From this adverse decision, the Bensons bring the case here on writ of error.

The controversy concerning the amount of rental due under the lease arises from a dispute between the parties as to whether the lease when executed had certain "riders" attached to it and made a part thereof. The Bottgers contend that these riders were a part of the original lease, showing an annual rental of $3,000, while the Bensons contend that these riders were not a part of the original lease. A full and complete hearing was had

on this issue which the trial court resolved in favor of the Bottgers, holding that under the evidence the lease in question had the riders attached at the time of execution and delivery. There being ample competent evidence in the record to sustain this finding, we must under the oft repeated rule sustain the finding of the trial court.

The remaining question is whether the dismissal of the Larimer County action with prejudice is res adjudicata of the issues in the instant case.

It is manifest that no previous action for the recovery of rent was ever instituted by the Bottgers against the Bensons, hence it is obvious that none of the issues between these parties have been litigated. The motion filed by the Bensons to dismiss the Third Party Complaint in the Larimer County action was never ruled on.

■ In *McDermott, Administrator, v. The Bent County Colorado Irrigation District,* 135 Colo. 70, 308 P. (2d) 603, we set forth the four points which must be shown in order for a defendant to avail himself of the plea of res adjudicata. We quoted there with approval from *People, ex rel. v. Maytag,* 129 Colo. 316, 270 P. (2d) 782, where it is stated:

"The General Rule seems to be that if there is identity of subject matter, identity of cause of action, identity of persons to the action, and identity of capacity in the persons for which or against whom the claim is made, that these four identities existing, a prior judgment is conclusive not only as to every question actually presented and decided, but also as to every question within the issues which might have been presented and determined * * *."

Application of the doctrine of res adjudicata had been determined a number of times by this court, but all of the cases so decided involve direct actions by the same plaintiff against the same defendants in a subsequent action. Although our situation here does not involve

such identity of parties, even those decisions would prohibit applying the doctrine here.

In *Youngquest v. Youngquest,* 102 Colo. 105, 76 P. (2d) 1117, the Court, in passing upon the rights of the plaintiff to maintain an action against the Youngquest estate for a portion of a bank account alleged by the Administrator of said estate to constitute an asset of the estate, where plaintiff had formerly been unsuccessful in an action claiming all of said bank account as her sole and separate property because she was a surviving joint tenant, said at page 110:

"But, says the administratrix, even if in fact the issue involved in the present proceeding was not litigated in the first case, it could have been under claimant's allegation therein that the restraining order against the bank has deprived this petitioner of property lawfully belonging to her, by which it is said the ownership of the fund, and every part thereof, was put in issue, and under which claimant should have advanced all evidence and theories of ownership, and having failed to do so, by the adverse judgment as to her right to the whole fund, she now is precluded from asserting a right to any part thereof. This rule, recognized in proper cases, is rendered inapplicable by the circumstances here. The principle contended for is controlling where the second action is based upon the same claim as was asserted in the first, but where the second proceeding is based upon a different claim, only matters actually litigated in the first action are concluded. This distinction was well pointed out by this Court in the case of *Grand Valley Irr. Co. v. Fruita Imp. Co.,* supra, where at page 500, it is said:

"The leading case on this general subject is *Cromwell v. County of Sac,* 94 U.S. 351. It was there said that the difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action for the same claim or demand, and its effect as an estoppel in another action between the same parties upon a dif-

ferent claim or cause of action, is this: In the former, judgment if rendered upon the merits, constitutes an absolute bar to a subsequent action. It concludes the parties as to every matter which was offered and received to sustain or defeat the claim or demand, and as to every other substantial matter which might have been offered for that purpose; but where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters actually litigated and determined, and not what might have been."

The Bottgers and the Bensons were not "opposing parties" in the Larimer County action.

The conclusion that the Larimer County action is not a bar to this action is further supported by the releases given by the parties when that action was dismissed. No release was ever given by the Bottgers to the Bensons, or vice versa, for the obvious reason that the case had raised no issues between them and it was clearly intended that the dismissal would not settle or release any issues which existed or might exist between them.

■ Bottgers' position in the instant case is entirely consistent with the adjudication in the Larimer County action. The fact issue in that court, which was never decided, as between the Bottgers and the Gehrleins was — Did the genuine lease provide for rental of $3,000 per annum or $3,000 for the five-year term? The order of dismissal in the first action dismissed the Bottgers' claim against the Gehrleins. That judgment barred the Bottgers from again asserting a claim against the Gehrleins based on an allegation that the lease rentals were anything other than $3,000 per year. It concluded nothing as far as the Bensons were concerned and, as above noted, no release was executed from the Bottgers to the Bensons.

We have considered the other matters urged for reversal and find them to be without merit.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.