Opinion by
Mr. Justice Frantz.
A summary judgment was entered in favor of the defendants (defendants in error) and against the plaintiff on its complaint. The plaintiff (W. R. Hall Transportation and Storage Company, a Colorado corporation, hereinafter referred to as the Transportation Company) seeks to have reversed the summary judgment entered against it on its complaint.
*74 The action was for a breach of contract in which the Transportation Company sought to recover as damages loss of profits from and after December 1957 which would have accrued to it had it been permitted to perform under the contract. Under the contract, the Thorn-burgs employed the Transportation Company to haul all uranium ores produced by them. Gunnison Mining Company (hereinafter referred to as the Mining Company) succeeded to the interests of the Thornburgs.
The several defendants had filed their answers, after which they filed a motion for summary judgment on the ground that the Transportation Company did not have the appropriate permit from the Colorado Public Utilities Commission for the hauling of the ores contemplated and that, hence, the hauling would be illegal and the contract unenforceable.
The summary judgment was entered after an extensive and comprehensive hearing of evidence which the trial court considered in conjunction with pleadings, depositions, admissions, and exhibits which were part of the record of the case.
The hauling contract recited that the Transportation Company “will transport all ores mined from said properties to a rail point, to mills now constructed, or to be constructed in the future . . . .” The Transportation Company undertook “to make available for hauling, the necessary hauling equipment at [the Mining Company’s] bins on twelve hours’ notice and to promptly load and deliver said ore to the point of destination as selected by [the Mining Company].”
Of importance is the paragraph in which the Transportation Company “agrees to strictly comply with all state and federal laws and regulations pertaining to the hauling herein described and to carry a minimum of liability insurance as required by the P.U.C. of those states in which [the Transportation Company] operates. . . . ”
It is provided in the contract that “should [the Transportation Company] fail to perform the covenants and *75 conditions herein contained [the Mining Company] may, upon giving written notice to [the Transportation Company] of [its] intention so to cancel this contract, cancel same providing, however, [the Transportation Company] may correct any deficiency complained of within thirty days of said notice and avoid forfeiture hereunder.”
It is undisputed that the Transportation Company had a common carrier certificate of authority commonly called “a common carrier call and demand service,” permitting operation in the counties of Mesa, Garfield, and Delta in the state of Colorado and occasional service throughout the state of Colorado. Under the certificate, the Public Utilities Commission recognized the authority of the Transportation Company to haul in interstate commerce pursuant to the sanction of the Interstate Commerce Commission.
From the evidence it appears that the Mining Company assisted the Transportation Company in making application for authority from the Public Utilities Commission of Arizona to haul in that state. The Mining Company also came to the aid of the Transportation Company in obtaining a carrier’s permit after the state of Utah had stopped the latter from hauling its material in that state.
In its summary judgment the trial court found as follows:
“6. Hauling continued until March, 1956, when Hall was advised to stop because ore would thereafter be stockpiled at the mine and later delivered to the mill then being constructed in Gunnison, Colorado, by Gunnison Mining Company, which Thornburgs controlled.
“7. In December, 1957, Hall learned that defendants were hauling their ore to Gunnison. Hall tendered performance of the contract which was ignored.
“8. At no time has Hall applied for or received authority as a private or common carrier to haul ore from Saguache County to Gunnison except whatever he had *76 originally for ‘occasional service anywhere in Colorado.’ ” In its conclusions, the court stated:
“1. The contract was valid between the parties, although it may have required Hall to obtain various permits to perform the provisions thereof.
i|: íj!
“4. Hauling from Saguache to Gunnison, if performed by Hall without a permit, would have given Hall no enforceable rights to recover for such hauling, as it would have been performed in direct opposition to the statutory prohibition. C.R.S. 1953, Section 115-11-2 and 115-9-3 and 115-11-3. Carter v. Thompkins, 133 Colorado 279, 294 Pacific 2d 265.
“5. If conduct of defendants could be construed as a waiver by them of the provision of the contract, it cannot be a waiver of the defense arising out of the statutes themselves since the statutes are not for the special benefit of defendants, but are, in this case, for the protection of the public and of licensed carriers. Creek v. Nonpareil Inv. Company, 66 Colorado 550, 185 Pacific 473.
“6. The doctrine of estoppel would be no more applicable than an express waiver for the same reasons.
“7. Since at no time has Hall been in position to tender performance that would not be in violation of the statutes, he cannot maintain an action for lost profits. It would be impossible for court or jury to engage in conjecture as to whether at any time Hall could or could not have obtained a permit to do the hauling in question had he applied.”
Courts do not presume an intention on the part of parties to a contract that it be performed in an unlawful manner when, under the contract, a lawful performance may be accomplished. There were present in the instant case circumstances which indicated an intention that uranium be lawfully hauled. Shedlinsky v. Budweiser Brewing Co., 163 N.Y. 437, 57 N.E. 620.
Thus, it was within the contemplation of the parties by the very terms of their contract that there would *77 be a strict compliance with all state and federal laws and regulations pertaining to the hauling of uranium. Where in the performance of the contract it became necessary to obtain a permit to haul, the parties cooperated in the application and in other respects for such permit. Time was provided for the parties to bring this about, for a thirty-day respite after notice was provided for in the contract in order to avoid a forfeiture thereof. Furthermore, the parties contemplated possible changes in the destination of ores and therefore must have contemplated the necessity for obtaining authority to transport ores, in the event such was required by such changes. Gaston v. Gordon, 208 Mass. 265, 94 N.E. 307; Murray Nussenbaum v. Chambers & Chambers Inc., 322 Mass. 419, 77 N.E. (2d) 780.
As already noted, it is apparent that the parties had placed a construction on this contract which comports with the notion that if an authority to haul became necessary they would see to it that an application for such authority was made and that the Mining Company would assist in the procurement of the necessary permit. This was the procedure used in connection with application for carrier permits from the states of Arizona and Utah. The construction placed upon a contract by the parties is generally deemed to be a reliable test as to its meaning. Greeley Co. v. McCloughan, 140 Colo. 173, 342 P. (2d) 1045.
The Mining Company breached the contract: it foreclosed performance by the Transportation Company of its obligations under the contract; it rendered bootless the making of an application by the Transportation Company for a permit to haul the Mining Company’s uranium to the latter’s mill, when the contract contemplated such applications as changing conditions required them. Its motion for summary judgment becomes untenable in view of its conduct, and the trial court committed error in granting the motion.
We hold that a proper construction of the contract in *78 volved in this case does not lead to illegality in its terms or in its performance.
The judgment is reversed with directions to proceed in manner consistent with the views herein expressed.
Mr. Justice Sutton and Mr. Justice Pringle concur.