Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 9, 2018

**2018 CO 22**

**No. 17SA247, <u>Gadeco, LLC v. Grynberg</u>—Physician–Patient Privilege—Implied Waiver.**

In this original proceeding, the supreme court considers whether the trial court abused its discretion when it found that the defendant impliedly waived the physician–patient privilege as to his mental health records by asserting counterclaims for breach of contract, requesting specific performance, and denying the opposing parties' allegations.  The supreme court affirms its rule that only privilege holders—patients—can impliedly waive the physician–patient privilege, and they do so by injecting their physical or mental condition into the case as the basis of a claim or an affirmative defense.  Correspondingly, an adverse party cannot place a patient's mental condition at issue through its defenses, nor can a privilege holder do so by denying an adverse party's allegations.  Applying those rules, the supreme court holds that the defendant did not waive the physician–patient privilege through his counterclaims or answer.  The supreme court concludes that the trial court abused its discretion by ordering the defendant to produce his medical records for in-camera review and makes the rule to show cause absolute.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

**2018 CO 22**

**Supreme Court Case No. 17SA247**
*Original Proceeding Pursuant to C.A.R. 21*
Arapahoe County District Court Case No. 16CV30959
Honorable Charles M. Pratt, Judge

**In Re**

**Plaintiffs/Counterclaim Defendants:**

Gadeco, LLC; Celeste C. Grynberg, individually and as Co-Trustee for the Rachel Susan Grynberg 1982 Trust, the Stephen Mark Grynberg 1983 Trust, and the Miriam Zela Grynberg 1986 Trust; The Rachel Susan Grynberg 1982 Trust; The Stephen Mark Grynberg 1983 Trust; The Miriam Zela Grynberg 1986 Trust; Pricaspian Development Corporation; Rachel S. Grynberg; Miriam Z. Grynberg; Stephen M. Grynberg, individually and as Trustee for Stephen Mark Grynberg Separate Property Trust; The Stephen Mark Grynberg Separate Property Trust; and RSM Production Corporation,

v.

**Defendant/Counterclaim Plaintiff:**

Jack J. Grynberg,

and

**Defendant:**

The Grynberg Petroleum Corporation.

**Rule Made Absolute**
*en banc*
April 9, 2018

**Attorneys for Plaintiffs/Counterclaim Defendants Celeste C. Grynberg, individually and as Co-Trustee for the Rachel Susan Grynberg 1982 Trust, the Stephen Mark Grynberg 1983 Trust, and the Miriam Zela Grynberg 1986 Trust; The Rachel Susan Grynberg 1982 Trust; The Stephen Mark Grynberg 1983 Trust; The Miriam Zela Grynberg 1986 Trust; Rachel S. Grynberg; Miriam Z. Grynberg; Stephen M. Grynberg, individually and as Trustee for Stephen Mark Grynberg Separate Property Trust; and The Stephen Mark Grynberg Separate Property Trust:**

Bartlit Beck Herman Palenchar & Scott LLP
Fred H. Bartlit, Jr.
Glen E. Summers
Daniel C. Taylor
Katherine L.I. Hacker
  *Denver, Colorado*

**Attorneys for Defendant/Counterclaim Plaintiff Jack J. Grynberg:**
Dorsey & Whitney LLP
Gregory S. Tamkin
Case Collard
Andrea Ahn Wechter
  *Denver, Colorado*


No appearance by or on behalf of Gadeco, LLC; Pricaspian Development Corporation; RSM Production Corporation; The Grynberg Petroleum Corporation.


**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1      In this original proceeding, we consider whether the defendant Jack Grynberg impliedly waived the physician–patient privilege by either (1) requesting specific performance of a contract, or (2) denying the plaintiffs' allegations that he made irrational decisions.  Grynberg asserted counterclaims for breach of contract against the plaintiffs, his children and former wife ("the Family").  Grynberg's counterclaims requested the specific performance of an oral or implied-in-fact contract in which the Family allegedly agreed to allow Grynberg to control several family companies for his lifetime.  The trial court found that Grynberg impliedly waived the physician–patient privilege by asserting those counterclaims, and it ordered him to produce three years' worth of mental health records for in-camera inspection.  Grynberg petitioned this court to review that ruling pursuant to C.A.R. 21, and we issued a rule to show cause why the trial court's order should not be vacated.

¶2      We have previously determined that only privilege holders—patients—can impliedly waive the physician–patient privilege, and that they do so by injecting their physical or mental condition into the case as the basis of a claim or an affirmative defense.  Weil v. Dillon Cos., 109 P.3d 127, 129 (Colo. 2005).  Relevant here, privilege holders inject their physical or mental condition into a case as the basis of a claim when they utilize the condition as "the predicate for some form of judicial relief."  Clark v. Dist. Court, 668 P.2d 3, 10 (Colo. 1983).  As a corollary to that rule, an adverse party cannot inject the patient's physical or mental condition into a case through its defenses.  See Hoffman v. Brookfield Republic, Inc., 87 P.3d 858, 864 (Colo. 2004).  Finally, patients do not inject their mental condition into the case by denying the opposing party's

allegations. <u>Clark</u>, 668 P.2d at 10. In keeping with our previous interpretations of the implied waiver doctrine, we hold that Grynberg did not inject his mental condition into the case as the basis of a claim by alleging that the Family breached a contract that does not reference his mental health. Likewise, he did not inject his mental condition into the case as the basis of a claim or an affirmative defense by denying the Family's allegations that he made irrational decisions. Accordingly, we conclude that Grynberg did not impliedly waive the physician–patient privilege and that the trial court abused its discretion by ordering Grynberg to produce his mental health records for in-camera inspection.

¶3 We make the rule to show cause absolute, and we remand this case to the trial court for further proceedings.

## I. Facts and Proceedings Below

¶4 This original proceeding arises out of a dispute between Grynberg, who founded a number of businesses, and his family, the owners and directors[1] of those businesses. According to Grynberg, he transferred his ownership interests in the businesses to the Family on the condition that he would remain in control of the businesses until his death. Grynberg alleges that the Family members expressed agreement to these terms either orally, in writing, or implicitly through their conduct. In 2016, however, the Family voted to remove Grynberg as president of each business, citing his declining mental health. Grynberg refused to comply.

---

[1] Grynberg's family members are the owners and directors of two of the family businesses and members of the third, which is a limited liability company.

4

¶5    The Family then filed this lawsuit, seeking a declaration that Grynberg no longer controlled the businesses and an injunction preventing him from representing the businesses. In its complaint, the Family asserted that Grynberg was exhibiting erratic behavior, making irrational decisions, and committing significant company funds to obviously fraudulent scam operations. In his amended answer, Grynberg denied the Family's allegations and asserted counterclaims, including claims for breach of the lifetime-control agreement. Grynberg alleged that the Family's breach of the oral or implied contract caused substantial monetary harm, and he sought "damages and/or specific performance" as relief.

¶6    Because the case was complex, the trial court appointed a special master to handle discovery issues. The Family filed a motion requesting that the special master order Grynberg to produce all medical records related to his mental health. Grynberg objected, arguing that his medical records were protected by the physician–patient privilege. The special master concluded:

> By arguing that he is capable of running the companies via his specific performance claim, [Grynberg] has inserted his physical and mental condition into the case (albeit, in response to the allegations noted above that he is incapable of running the companies). By inserting his mental condition into the case, [Grynberg] has waived his rights to privacy and his physician–patient privilege.

In accordance with that finding, the special master ordered Grynberg to locate "all medical records from any doctor for the past <u>three</u> years that have to do with [Grynberg's] <u>mental condition</u>, including results of any testing that has been done," and deliver the records to the special master for in-camera inspection. Over Grynberg's

5

objection, the trial court adopted the special master's order and, additionally, required Grynberg to deliver the same records to the trial court for in-camera review.

¶7 Grynberg petitioned this court to review the trial court's order pursuant to C.A.R. 21, and we issued a rule to show cause why we should not vacate that order. We now make the rule absolute.

## II. Original Jurisdiction

¶8 We may choose to exercise our original jurisdiction when an ordinary appellate remedy would be inadequate. C.A.R. 21(a)(1). "When a trial court's order involves records which a party claims are protected by a statutory privilege, as here, an immediate review is appropriate because the damage that could result from disclosure would occur regardless of the ultimate outcome on appeal from a final judgment." Bailey v. Hermacinski, 2018 CO 14, ¶ 8, 413 P.3d 157, 160 (quoting Ortega v. Colorado Permanente Group, P.C., 265 P.3d 444, 447 (Colo. 2011)). Therefore, we find it appropriate to address the validity of the trial court's order that found that Grynberg waived the physician–patient privilege as to his mental health records. In reviewing a discovery ruling under C.A.R. 21, we review a trial court's decision for an abuse of discretion. Cardenas v. Jerath, 180 P.3d 415, 420 (Colo. 2008).

## III. Analysis

¶9 In its order adopting the special master's conclusions, the trial court determined that Grynberg injected his mental condition into the case and thereby waived the physician–patient privilege in two ways: (1) by asserting counterclaims for breach of the lifetime-control agreement and seeking specific performance as a remedy; and (2) by

denying the allegations in the Family's complaint that he is incapable of running the companies. After reviewing the law governing the physician–patient privilege, we address each of these potential waivers in turn. We conclude that Grynberg did not waive the physician–patient privilege either by alleging that the Family breached the lifetime-control agreement and requesting specific performance or by denying the allegations in the Family's complaint.

## A. Applicable Law

¶10    C.R.C.P. 26(b)(1) authorizes discovery of information relevant to the subject matter in the pending action as long as the information is "not privileged." The physician–patient privilege provides that "[a] physician . . . shall not be examined without the consent of his or her patient as to any information acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient." § 13-90-107(1)(d), C.R.S. (2017). "The purpose of the physician–patient privilege is to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the physician's disclosure of information imparted to him by the patient during the course of a consultation for purposes of medical treatment." Clark, 668 P.2d at 8. The privilege applies to both in-court testimony and the pretrial discovery of information. Weil, 109 P.3d at 129. However, the privilege does not protect against the disclosure of medical records when the patient has made an express or implied waiver, both of which constitute "consent" to disclosure for purposes of section 13-90-107(1)(d). Clark, 668 P.2d at 10. Because the statutory privilege belongs to the patient, only the patient may waive it. Id. at 8.

7

The claimant of the physician–patient privilege bears the burden of establishing that the privilege applies. Alcon v. Spicer, 113 P.3d 735, 739 (Colo. 2005), as modified on denial of reh'g, June 27, 2005. But once the privilege has been established, the party seeking to overcome the privilege must demonstrate waiver. Id.

¶11 Important here, one way a party can demonstrate waiver is by showing that the privilege holder "injected his physical or mental condition into the case as the basis of a claim or an affirmative defense." Clark, 668 P.2d at 10. We discussed the rationale for this type of implied waiver in Clark, a wrongful death case. There, we held that, when the holder of the physician–patient privilege pleads a physical or mental condition as the basis of a claim or an affirmative defense, "the only reasonable conclusion is that he thereby impliedly waives any claim of confidentiality respecting that same condition." Id. Under those circumstances, the privilege holder has "utilized his physical or mental condition as the predicate for some form of judicial relief, and his legal position as to that condition is irreconcilable with a claim of confidentiality." Id. Practically speaking, a litigant who uses a physical or mental condition as the predicate for relief "must eventually waive the privilege to prove his case or his defense." Id. (quoting Koump v. Smith, 250 N.E.2d 857, 861 (N.Y. 1969)). Preventing the opposing party from accessing the same information in such a case would allow the privilege holder to use the physician–patient privilege as "a sword rather than a shield." Id. (quoting Koump, 250 N.E.2d at 861).

¶12 Since Clark, we have applied this standard in personal injury and medical malpractice cases only. See, e.g., Alcon, 113 P.3d at 736 (considering scope of implied

8

waiver in personal injury lawsuit); <u>Hoffman</u>, 87 P.3d at 863–64 (holding that slip-and-fall plaintiff did not waive the psychotherapist–patient privilege by alleging generic claims for mental suffering); <u>Samms v. Dist. Court</u>, 908 P.2d 520, 524 (Colo. 1995) (determining as a threshold matter in scope-of-waiver case that the patient waived the physician–patient privilege through her medical malpractice claim).  In each case where we found that the privilege holder inserted his physical or mental condition into the case as the "basis of a claim or an affirmative defense," <u>Clark</u>, 668 P.2d at 10, the privilege holder sought damages for a physical or psychological injury that the opposing party allegedly caused.  <u>See, e.g.</u>, <u>Alcon</u>, 113 P.3d at 741 (holding that the patient waived the physician–patient privilege for records related to the cause and extent of the injuries and damages she claimed); <u>Bond v. Dist. Court</u>, 682 P.2d 33, 38 (Colo. 1984) (holding that the plaintiff waived the physician–patient privilege as to mental health records by seeking compensation for the cost of psychiatric counseling, which she claimed was necessary after the accident that the defendant allegedly caused).

¶13     Two corollaries to the implied waiver rule are also relevant in this case.  First, while a privilege holder waives the physician–patient privilege by injecting his "physical or mental condition into the case as the basis of a claim or an affirmative defense," a privilege holder does not waive the privilege by denying the opposing party's allegations.  <u>See</u> <u>Clark</u> 668 P.2d at 10–11.  Similarly, an adverse party cannot place a patient's mental condition at issue through its defenses.  <u>Hoffman</u>, 87 P.3d at 864.

9

## B. Application

### 1. Grynberg did not waive the physician–patient privilege by alleging that the Family breached the lifetime-control agreement and requesting the remedy of specific performance.

¶14 The Family asserts that Grynberg injected his mental condition into the case by asserting his breach of contract claim and accompanying that claim with a request for specific performance. The Family raises two arguments to support this position. We find neither persuasive.

¶15 First, the Family argues that by asking the trial court to enforce a contract—the terms of which allowed Grynberg to control the family companies for his entire life—Grynberg "necessarily alleg[ed] that he is mentally capable of running the companies" and thereby injected his mental condition into the case as the basis of his breach of contract claim. Unlike in the personal injury and medical malpractice cases where we have traditionally found waiver under the rule from Clark, Grynberg does not seek compensation for a physical or psychological injury that the Family caused him. Under Clark, Grynberg would have injected his mental condition into the case as the basis of a claim only if he "utilized his physical or mental condition as the predicate for some form of judicial relief." 668 P.2d at 10. Claimants utilize their condition as the predicate for relief when they must "waive the privilege to prove [their] case." Id. (quoting Koump, 250 N.E.2d at 861). To prove his breach of contract claim, Grynberg will not need to waive the privilege, meaning he has not injected his mental condition into the case.

10

¶16 Indeed, according to Grynberg, the lifetime-control agreement excluded any mention of his mental health. Grynberg's counterclaim for breach of an express agreement against the Family states the following: "Since the inception of [the family businesses], the [Family members] have conducted themselves and operated under an express agreement whereby Mr. Grynberg would continue to maintain sole operational control of [the businesses] and the assets of those entities during his lifetime." Similarly, Grynberg's alternative counterclaim for breach of an implied-in-fact contract states that the parties' conduct demonstrates that they agreed that Grynberg would provide the Family ownership interests in the businesses "on the condition that [he] would be allowed to control those entities during his lifetime." In these counterclaims, Grynberg alleges that the Family agreed that he would maintain control of the businesses and their assets during his lifetime in exchange for transferring ownership of the businesses to the Family without regard to his mental fitness. Accordingly, in order to prove that the Family breached the agreement by ousting him as president, Grynberg need only prove that (1) the Family agreed to a valid contract that included his terms, (2) Grynberg transferred ownership of the companies, and (3) the Family subsequently removed him as president. Because Grynberg's breach of contract claim does not require him to demonstrate anything about his mental or physical health, he did not inject his mental condition into the case by bringing that claim.

¶17 The Family nevertheless asserts that, because Grynberg sought specific performance, the trial court will have to consider his mental condition. Ordering specific performance of a contract is appropriate only if the contract is "fair, equal and

11

just in its terms, consideration not grossly inadequate, and the remedy not inequitable, unconscionable or oppressive." Greeley & Loveland Irrigation Co. v. McCloughan, 342 P.2d 1045, 1050 (Colo. 1959) (quoting De Feo v. Smith, 203 P.2d 485, 487 (Colo. 1949)). Thus, in the event Grynberg proves a breach, the trial court may need to consider Grynberg's capacity to run the companies when deciding whether to award specific performance. But that potential decision regarding the appropriate remedy does not affect whether Grynberg waived the physician–patient privilege (i.e., utilized his mental condition as the basis for judicial relief). Just as a plaintiff is the master of his complaint, a privilege holder is the master of his waiver.

¶18    Second, the Family argues that Grynberg injected his mental condition into the case by alleging that the Family breached an implied-in-fact contract. The Family asserts that, in order to determine the terms of an implied contract, the trial court must look to the parties' conduct, and the Family's conduct of ousting Grynberg as president as soon as his mental health declined suggests that the parties agreed that Grynberg's right to control the companies was conditioned on his being mentally capable of running them. With this argument, the Family squarely disagrees with Grynberg's characterization of the terms of the lifetime-control agreement, assuming the agreement exists. Grynberg alleges that the parties' conduct gives rise to an agreement that is void of any mental fitness requirement; the Family urges that any implied agreement includes such a term. By disputing the terms of the alleged agreement, the Family is asserting an excuse defense. Essentially, the Family argues that it was excused from performing under the agreement because the implied condition that Grynberg maintain

12

a certain level of mental fitness was not met. It is well-established that an opposing party cannot overcome the physician–patient privilege by raising defenses. Hoffman, 87 P.3d at 864 (holding that "the district court erred when it considered [the defendant's] need for the information [to establish its defense] as a pertinent factor in determining whether the privilege had been waived"); Johnson v. Trujillo, 977 P.2d 152, 157 (Colo. 1999) (declining to find an implied waiver even though the plaintiff's mental health records were relevant to the defendant's causation defense). In order to determine whether a litigant waived the physician–patient privilege by injecting his mental condition in the case as the basis of a claim or an affirmative defense, we consider only the claims and affirmative defenses alleged by the privilege-holder, not the defenses that the opposing party may raise at trial. Hoffman, 87 P.3d at 864.

¶19    Accordingly, we conclude that Grynberg did not waive the physician–patient privilege by asserting that the Family breached the lifetime-control agreement or by requesting specific performance of that contract.

## 2. Grynberg did not waive the physician–patient privilege by denying the allegations in the Family's complaint that he made irrational decisions.

¶20    The Family also asserts that Grynberg waived the physician–patient privilege by denying the allegations in the Family's complaint that he made irrational decisions. But holders of the physician–patient privilege do not inject their mental condition into a case by denying the opposing party's allegations that the privilege holder has mental health problems. See Clark, 668 P.2d at 10–11.

13

¶21    In Clark, we rejected the argument that the holder of the physician–patient privilege impliedly waives the privilege by "filing a pleading in a case in which his physical or mental condition may be an issue." Id. at 10. In that case, a bouncer shot a patron during his shift at a bar. Id. at 6. The plaintiff sued the bouncer and the bar for wrongfully causing the victim's death. Id. The complaint included claims of negligence, assault, and battery, and it alleged that the bar hired the bouncer and equipped him with a gun despite knowing about his history of mental illness and substance abuse. Id. In his answer, the bouncer denied any liability for the victim's death and asserted several affirmative defenses, none of which raised his past physical or mental conditions as a defense to the claims. Id. During his deposition, the bouncer admitted to seeking treatment for mental health and substance abuse issues several years prior to the incident. Id. Over the bouncer's objection that his medical records were privileged, the trial court ordered that he produce all treatment records related to his mental health. Id. at 6–7. We reversed, rejecting the plaintiff's argument that the bouncer injected his mental condition into the case by denying the liability allegations. Id. at 9–11. Instead, we reaffirmed our rule that the appropriate inquiry is "whether the privilege holder has injected his physical or mental condition into the case as the basis of a claim or an affirmative defense." Id. at 10. We held that, even though the plaintiff's claims against the bar hinged on allegations concerning the bouncer's prior mental condition, this had no bearing on whether the bouncer waived the physician–patient privilege. Id. at 10–11. Likewise, the bouncer's denial of the plaintiff's claims against him did not waive the physician–patient privilege. Id.

14

¶22 Here, just as in <u>Clark</u>, Grynberg's answer to the Family's allegations cannot be fairly construed "as a manifestation of his intent to forego the confidentiality attaching to his communications to a treating [physician]." <u>Id.</u> Privilege holders do not inject their mental or physical condition into a case by simply denying the opposing party's allegations, even when those allegations relate to the privilege holder's mental health. Therefore, the trial court erred in concluding that Grynberg waived the physician–patient privilege by denying the Family's allegations "that he is incapable of running the companies."

¶23 As a subsequent matter, we decline to address whether Grynberg voluntarily waived the physician–patient privilege by allowing family members to attend various medical appointments. The trial court did not address this issue, nor do we in this original proceeding reviewing the trial court's order for an abuse of discretion.

## IV. Conclusion

¶24 We hold that Grynberg did not impliedly waive the physician–patient privilege either by alleging that the Family breached the lifetime-control agreement and requesting specific performance or by denying the allegations in the Family's complaint. Therefore, the trial court abused its discretion when it ordered Grynberg to produce his medical records for in-camera review. Accordingly, we make our rule to show cause absolute, and we return this case to the trial court for further proceedings consistent with this opinion.

15