The opinion summaries are not part of the Colorado Supreme Court's opinion. They have been prepared solely for the reader's convenience. As such, they may not be cited or relied upon. If there is any discrepancy between the language in the summary and the opinion, the language in the opinion controls.

ADVANCE SHEET HEADNOTE
June 10, 2024

**2024 CO 39**

**No. 24SA19, *In the Matter of the Estate of Ashworth*—Trusts and Estates—Testamentary Capacity—Physician-Patient Privilege.**

In this contested will case, the supreme court holds that the physician-patient privilege survives death. The court further holds that if medical records are required to administer an estate, the privilege is impliedly waived. This testamentary exception to the physician-patient privilege mirrors the exception that applies to the attorney-client privilege under the same circumstances. The exception reflects the purpose of probate proceedings: the administration of decedents' estates in accordance with their wishes.

In the instant case, where testamentary capacity is at issue, an in camera review of the decedent's medical records is justified despite the privileged nature of those records. The court discharges the rule to show cause, allowing the trial court to move forward with its in camera review.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

**2024 CO 39**

---

**Supreme Court Case No. 24SA19**
*Original Proceeding Pursuant to C.A.R. 21*
Weld County District Court Case No. 23PR30198
Honorable Julie C. Hoskins, Judge

---

**In Re**

**In the Matter of the Estate of:**

Robert Harrison Ashworth, Deceased.

---

**Rule Discharged**
*en banc*
June 10, 2024

---

**Attorneys for Petitioner Christine Miller:**
The Stout Law Firm, LLC
Stephanie Stout
 *Greeley, Colorado*

**Attorneys for Respondent Brian Ashworth:**
Gant Law, LLC
Brynne Gant
Ben Lutter
Jess McLaggan
 *Greeley, Colorado*

Aitken Law, LLC
Sharlene Aitken
 *Denver, Colorado*

**Attorneys for Respondent Weld County District Court:**
Philip J. Weiser, Attorney General
Allison S. Block, Assistant Attorney General Fellow
   *Denver, Colorado*

**Attorneys for Amicus Curiae Trust & Estate Section of the Colorado Bar Association:**
Conover Law, LLC
Tammy D. Conover
Scott H. Challinor
Nicholas D. McWharter
   *Greenwood Village, Colorado*

Miller & Steiert P.C.
Spencer J. Crona
   *Littleton, Colorado*

**JUSTICE HART** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE SAMOUR,** and **JUSTICE BERKENKOTTER** joined.

JUSTICE HART delivered the Opinion of the Court.

¶1 Medical records can play a vital role in contested probate proceedings when the deceased's mental capacity prior to passing is in question. Sometimes, though, when one party to a will dispute seeks to introduce medical records of the deceased, the other party resists disclosure, asserting that the records are protected by the physician-patient privilege. That is what happened here.

¶2 Respondent, Brian Ashworth, contested the validity of his father's most recent will, raising questions about Robert Harrison Ashworth's testamentary capacity and susceptibility to undue influence. The trial court ordered the decedent's daughter, Christine Miller, to produce medical records for the final eight years of Ashworth's life for an in camera review. She resists any disclosure of the records, citing the physician-patient privilege.

¶3 We hold that the physician-patient privilege survives the privilege holder's death, but that the testamentary exception provides for disclosure of the decedent's privileged medical records if they are required to administer the estate. We accordingly discharge the rule to show cause and lift the stay on the trial court's in camera review of Ashworth's medical records.

## I. Facts and Procedural History

¶4 Robert Harrison Ashworth died on December 22, 2022. In 2017, when he was in the early stages of Alzheimer's disease, Ashworth executed a will that

named his son, Brian, as his estate's personal representative. The will divided Ashworth's estate evenly among his four children: Christine, Gwendolyn, Brian, and Kimberly.[1] Then, in early 2022, Ashworth executed a new will that named Christine as the personal representative and included only Christine and Gwendolyn as beneficiaries. The 2022 will excluded Brian and Kimberly from any inheritance.

¶5 In the years between the execution of the two wills, Ashworth's memory and ability to live independently declined as conflict among his children intensified. Brian and Kimberly ultimately lost contact with Ashworth. Christine and Gwendolyn maintained control over Ashworth's care and were allegedly present during the signing of the 2022 will.

¶6 After Ashworth's death, Christine submitted the 2022 will for probate. Brian contested its validity and sought access to medical records from the last eight years of Ashworth's life, starting from the first time he was diagnosed with declining mental faculties. Brian claimed that the records would shed light on Ashworth's decision-making capacity (or lack thereof) at the time he executed his final will. Christine, however, refused to provide any medical records, citing the physician-patient privilege. The trial court considered written motions from both

---

[1] Throughout, we refer to the decedent as Ashworth, and to his children by their first names.

4

parties before ordering Christine to provide the medical records for an in camera review, stating that the court would "not release any records which are not related to the mental capacity of the decedent."

¶7 Christine petitioned this court for relief from the trial court's order, and we granted the petition.

## II. Analysis

¶8 After affirming our jurisdiction under C.A.R. 21, we hold that (1) the physician-patient privilege survives death and (2) the testamentary exception allows for disclosure of probative privileged materials when necessary to administer an estate.[2]

## A. Jurisdiction

¶9 This court may exercise its original jurisdiction pursuant to C.A.R. 21 when an ordinary appellate remedy would be inadequate. C.A.R. 21(a)(2). In a discovery dispute over privilege, like the one here, the harm occurs before trial, at the time the privileged material is disclosed. *Gadeco, LLC v. Grynberg*, 2018 CO 22, ¶ 8, 415 P.3d 323, 327. Even a favorable appellate outcome would come too late to

---

[2] Christine also claimed at the trial court and argues here that Ashworth's medical records are protected under the federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). 42 U.S.C. §§ 1320d to 1320d-9. HIPAA does protect medical records, but it includes an exception that allows for disclosure in accordance with a court order. 45 C.F.R. § 164.512(e)(1)(i) (2024). Because the exception and its applicability in this circumstance are clear, we need not address this argument further.

vindicate the privilege-holder because disclosure would have already happened. *Id.* We therefore frequently exercise our jurisdiction under Rule 21 to intervene in circumstances like those presented here. *See, e.g., id.; Clark v. Dist. Ct.*, 668 P.2d 3, 7 (Colo. 1983); *Hartmann v. Nordin*, 147 P.3d 43, 48–49 (Colo. 2006). As in these other discovery disputes, we find that interlocutory review is appropriate, and we review the trial court's order for an abuse of discretion. *Grynberg*, ¶ 8, 415 P.3d at 327.

### B. The Physician-Patient Privilege Survives Death

¶10 Colorado's physician-patient privilege is statutory. "A physician, surgeon, or registered professional nurse . . . shall not be examined without the consent of his or her patient as to any information acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient. . . . " § 13-90-107(1)(d), C.R.S. (2023). The privilege applies with equal force whether the privileged information is sought via in-court testimony or through pretrial discovery. *Grynberg*, ¶ 10, 415 P.3d at 327–28.

¶11 The purpose of this privilege is "to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the physician's disclosure of information imparted to him by the patient during the course of a consultation for purposes of medical treatment." *Clark*, 668 P.2d at 8. This purpose mirrors that of the

6

attorney-client privilege, which aims to promote candor in legal consultations by protecting against later disclosure of confidential material, even after the client has died. *See Wesp v. Everson*, 33 P.3d 191, 197, 200 (Colo. 2001).

¶12 In further similarity to the client in the attorney-client relationship, the patient is the protected party in the physician-patient relationship. *See In re Shapter's Est.*, 85 P. 688, 691 (Colo. 1905) ("The purpose of the statute in regard to privileged communications made to an attorney or physician is to [protect] the client or patient."), *superseded by statute on other grounds*, § 7297, C.R.S. (1908), *as recognized in James v. James*, 170 P. 285, 287 (Colo. 1918). Accordingly, the patient, like the client, is the only person who can expressly or impliedly waive the privilege. *Grynberg*, ¶ 10, 415 P.3d at 328 (patient); *In re Est. of Rabin*, 2020 CO 77, ¶ 36, 474 P.3d 1211, 1219 (client).

¶13 This court has never expressly held that the physician-patient privilege extends beyond the death of the patient, but we have made clear that the attorney-client privilege does. *See, e.g.*, *Wesp*, 33 P.3d at 200; *Rabin*, ¶ 37, 474 P.3d at 1220; *see also Swidler & Berlin v. United States*, 524 U.S. 399, 407 (1998) ("Posthumous disclosure of [privileged] communications may be as feared as disclosure during the client's lifetime."). Noting the privileges' similarities in purpose and operation, we hold that the protections of the physician-patient privilege continue after the privilege-holder has died.

7

## C. The Testamentary Exception Allows for Disclosure of Privileged Materials When Necessary for Administration of an Estate

¶14 While both the physician-patient privilege and the attorney-client privilege extend past death, neither is absolute. When a will is contested, withholding information in deference to an absolute privilege of either variety would frustrate the purposes of the Colorado Probate Code: settlement and administration of the estate in accordance with the decedent's testamentary intent. § 15-10-102(2)(b), C.R.S. (2023). We have thus applied a testamentary exception to these privileges, allowing them to be pierced when a waiver of the privilege is necessary to administer the estate.

¶15 This court recognized a testamentary exception to the attorney-client and physician-patient privileges as early as 1905. In *Shapter's Estate*, the decedent's attorney and physicians were permitted to testify about the decedent's testamentary capacity regarding a contested will. 85 P. at 691. We upheld the inclusion of both the medical and legal testimony, citing other jurisdictions' acceptance of the exception. *Id.* Nearly 100 years later, in *Wesp*, we affirmed that "Colorado recognizes the testamentary exception" for the attorney who prepared the will. 33 P.3d at 200–01. We noted that the purpose of the exception is to further the testator's intent. *Id.* More recently, in *Rabin*, we again affirmed the

testamentary exception in the context of attorney-client privilege. ¶¶ 41–42, 474 P.3d at 1220–21.

¶16 *Shapter's Estate* is the only case in which we have explicitly applied the testamentary exception to the physician-patient privilege. 85 P. at 691 ("[W]hen the dispute is between the devisee and heirs at law, all claiming under the deceased, either the devisee or heirs, may call the attending physician as a witness."). But several of our contested will cases have mentioned, without fanfare, that the decedent's physician testified about their patient's mental or physical condition. *See, e.g., Ofstad v. Sarconi*, 252 P.2d 94, 95 (Colo. 1952); *Cunningham v. Stender*, 255 P.2d 977, 982 (Colo. 1953); *In re Sebben's Est.*, 375 P.2d 516, 517 (Colo. 1962); *Breeden v. Stone*, 992 P.2d 1167, 1169 (Colo. 2000); *see also* David K. Johns et al., *Colorado Estate Planning Handbook* § 53.16.2 (7th ed. 2022) ("It is well established that evidence as to the decedent's condition of health is discoverable in will contest litigation where lack of testamentary capacity or susceptibility of undue influence has been alleged."). We are not breaking new ground here. We are simply explicitly recognizing what has been longstanding practice.

¶17 Furthermore, as explained above, the attorney-client and physician-patient privileges are motivated by the same purpose: promoting full disclosure within the relationship. They operate similarly regarding waiver, and they both survive

the death of the privilege-holder. Both privileges would serve to frustrate the purposes of probate proceedings if they were not subject to a testamentary exception. We have expressly recognized the exception to the attorney-client privilege, and today we do the same for the physician-patient privilege.

¶18 The testamentary exception to the physician-patient privilege is particularly important in contested will cases when a party places the decedent's physical or mental health at issue by raising "sound mind" or "undue influence" claims. Both claims often cannot be proved or disproved through direct evidence; the factfinder must draw inferences from evidence about what the decedent knew, understood, and believed when the contested will was executed. *See Davis v. Davis*, 170 P. 208, 213 (Colo. 1917) (noting that, in these cases, "the only positive and affirmative proof to be expected or required is of facts and circumstances from which undue influence or mental incapacity may be reasonably inferred"). These circumstantial assessments would be severely curbed if the decedent's relevant medical records were off the table. The "sound mind" factors and the "undue influence" susceptibility assessment both typically require medical or mental condition evidence. *See Cunningham*, 255 P.2d at 981–82 (listing the five "sound mind" factors for assessing the decedent's "mind and memory" when testamentary capacity is at issue); *Lehman v. Lindenmeyer*, 109 P. 956, 959 (finding that it was

appropriate for the jury to take into consideration the decedent's "physical and mental condition" in an undue influence case).

¶19    That is precisely the situation we are presented with here.  The parties' dispute concerns Ashworth's medical records, which would normally fall under the physician-patient privilege.  Brian's claims regarding the validity of the 2022 will rest on Ashworth's mental condition and susceptibility to undue influence during the years of his Alzheimer's disease-related decline.  If the medical records at issue here illuminate Ashworth's testamentary capacity and aid the court in determining whether the 2022 will was valid, the testamentary exception applies.

¶20    Of course, this exception applies only to pertinent records.  The order that gave rise to this petition requires an in camera review, and it specifies that any subsequent disclosure will be limited to records relevant to Ashworth's mental capacity.  In camera review protects against disclosure of irrelevant medical information to which the exception does not extend.  *See Rabin*, ¶ 42 n.8, 474 P.3d at 1221 n.8.[3]

---

[3] Christine argues that the trial court erred in granting the motion for in camera review of the requested materials without holding a hearing.  Christine did not request a hearing in any of the motions practice before the trial court and thus waived the argument.  In any event, the decision whether to grant a hearing before ruling on such a motion is within the sound discretion of the court.

## III. Conclusion

¶21    We hold that while the physician-patient privilege extends past death, the testamentary exception allows for disclosure of privileged materials in probate proceedings, if those materials are necessary to settle and administer the decedent's estate.  Accordingly, we discharge the rule to show cause and remove the stay on the trial court's proceedings.