24CA0089 Estate of McClure 10-03-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0089
Pueblo County District Court No. 23PR30096
Honorable Timothy O'Shea, Judge

---

In the Matter of the Estate of Jonna Kay McClure, deceased.

Joseph Anthony Lopez,

Appellant,

v.

Stephanie L. Moore,

Appellee.

---

ORDERS AFFIRMED

Division III
Opinion by JUDGE GOMEZ
Dunn and Navarro, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 3, 2024

---

William J. Ballas, Pueblo, Colorado, for Appellant

Charles D. Esquibel, Pueblo, Colorado, for Appellee

¶ 1     In this probate case, Joseph Anthony Lopez appeals the trial court's orders rejecting his claim that he was the common law spouse of the decedent, Jonna Kay McClure, and appointing the decedent's sister, Stephanie L. Moore, as personal representative of the estate.  In addition to challenging the trial court's rulings on the claimed common law marriage and the appointment of a personal representative, he also challenges the trial court's admission of evidence from the decedent's former attorney during the proceedings.  We reject Lopez's challenges and affirm the court's orders.  However, we deny Moore's request seeking appellate attorney fees on the grounds that the appeal is frivolous.

## I.    Background

¶ 2     After McClure's death in 2023, Moore petitioned the trial court to find that McClure had died intestate and to determine her heirs.  Moore also nominated herself to serve as personal representative of the estate.  In response, Lopez asserted that he was McClure's common law spouse and asked that he be appointed as the

personal representative.[1]  The court scheduled a two-day hearing to resolve the issues.

¶ 3     Before the hearing, Moore became aware of a "Cohabitation Agreement" between McClure and Lopez that an attorney had drafted for McClure before her death.  That draft agreement — which Lopez said he never received and apparently neither he nor McClure ever executed — provided, in part:

> Each of [u]s is an unmarried person. . . .  We are not married to each other or to anyone else as of the date of this Agreement.  If anyone has ever received any impression by our conduct that we were or are married, it was a misunderstanding.  Our cohabitation is an unmarried cohabitation.  No marriage between us has existed or is intended to exist under Colorado law or the laws of any other jurisdiction.  No future conduct of ours shall be deemed to constitute holding our relationship as a marriage.

---

[1] McClure and Lopez met in 2008, while McClure was married to John McClure.  The McClures divorced in May 2009, and John McClure later passed away.  Shortly after the divorce, McClure and Lopez began a romantic relationship, and, in August 2009, Lopez moved in with McClure.  They cohabitated from then until McClure's death about thirteen and a half years later.

The draft agreement went on to provide for the parties' respective property rights and financial obligations at that time as well as upon the termination of their cohabitation.

¶ 4    Moore sought the disclosure of evidence regarding the attorney's representation of McClure, and later Moore sought the admission of that evidence, arguing that it was relevant to whether McClure believed she was married to Lopez. Lopez objected to both the discovery and the later admission of that evidence, arguing that it was protected by the attorney-client privilege. The trial court overruled both objections, allowed the discovery, and admitted the evidence at the hearing under the testamentary exception to the attorney-client privilege.

¶ 5    During the two-day hearing, the court heard evidence from both sides, including testimony from Lopez, testimony from several people who knew McClure and Lopez throughout their relationship, records of McClure's and Lopez's property ownership and tax filings, and evidence regarding the draft Cohabitation Agreement.

¶ 6    The court later entered an order finding that the evidence didn't clearly establish that McClure and Lopez mutually agreed to be in a marital relationship and, thus, that they were not common

law married. The court therefore determined that Moore had priority to be appointed as personal representative. Two days later, the court entered an order appointing Moore as personal representative and determining McClure's heirs (who did not include Lopez). This appeal followed.

## II. Common Law Marriage

¶ 7 Lopez contends that the trial court erred in finding that he and McClure were not common law married. We disagree.

¶ 8 "A determination of whether a common law marriage exists turns on issues of fact and credibility, which are properly within the trial court's discretion." *In re Estate of Yudkin*, 2021 CO 2, ¶ 16 (quoting *People v. Lucero*, 747 P.2d 660, 665 (Colo. 1987)). "Accordingly, we review the [court's] factual findings for clear error and [its] common law marriage finding for an abuse of discretion." *Id.* A factual finding is clearly erroneous if it has no support in the record. *Blakeland Drive Invs., LLP IV v. Taghavi*, 2023 COA 30M, ¶ 28. And a court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair or is based on an erroneous understanding or application of the law. *In re Marriage of Badawiyeh*, 2023 COA 4, ¶ 9.

4

¶ 9     In *Hogsett v. Neale,* the supreme court established an updated test for determining whether a common law marriage exists:

> [A] common law marriage may be established by the mutual consent or agreement of the couple to enter the legal and social institution of marriage, followed by conduct manifesting that mutual agreement.  The key question is whether the parties mutually intended to enter a *marital* relationship — that is, to share a life together as spouses in a committed, intimate relationship of mutual support and mutual obligation.

2021 CO 1, ¶ 49.  Where there is no evidence of an express agreement to marry, the court may infer the existence of a marital relationship from the parties' conduct.  *Id.*  This involves "a flexible inquiry into the totality of the circumstances that relies on the factfinder's credibility determinations and weighing of the evidence." *Id.* at ¶ 50.  In particular, a court should consider such factors as (1) "cohabitation"; (2) "reputation in the community as spouses"; (3) "maintenance of joint banking and credit accounts"; (4) "purchase and joint ownership of property"; (5) "filing of joint tax returns"; (6) "use of one spouse's surname by the other or by children raised by the parties"; (7) "shared financial responsibility, such as leases in both partners' names, joint bills, or other payment

records"; (8) "joint estate planning, including wills, powers of attorney, [and] beneficiary and emergency contact designations"; (9) "symbols of commitment, such as ceremonies, anniversaries, cards, [and] gifts"; (10) "the couple's references to or labels for one another"; and (11) "the parties' sincerely held beliefs regarding the institution of marriage." *Id.* at ¶¶ 55-56.

¶ 10 The trial court applied this test to determine whether McClure and Lopez were common law married. The court first found "no evidence in the record reflecting that [McClure] and Lopez ever had an express agreement to marry." It then "turn[ed] to the couple's conduct to determine whether" a common law marriage existed.

¶ 11 In evaluating the couple's conduct, the court assessed each factor articulated by the supreme court in *Hogsett* and concluded that several factors — cohabitation, maintenance of joint banking and credit accounts, purchase and joint ownership of property, shared financial responsibility, and beneficiary and emergency contact designations — weighed in favor of a common law marriage finding. On the other hand, the court concluded that several other factors — reputation in the community as spouses, filing of joint tax returns, use of one spouse's surname, symbols of commitment, and

6

the couple's references to or labels for one another — weighed against a common law marriage finding, and that some of those factors weighed "heavily" against such a finding. The court also concluded that there was no evidence concerning the final factor — the parties' beliefs about the institution of marriage. After assessing all of the factors, the court determined that the totality of the circumstances did not indicate a manifestation of a mutual agreement to be married.

¶ 12 On appeal, Lopez points to evidence that he claims supports the existence of a common law marriage, particularly evidence that he and McClure lived together for several years, had joint bank accounts, jointly owned property, named each other as emergency medical contacts, named each other as beneficiaries on insurance policies, wore wedding rings, exchanged commitment symbols like gifts and cards, and introduced each other as spouses. The court discussed that evidence in its assessment of the *Hogsett* factors. But the court came to different conclusions about whether it demonstrated the existence of a common law marriage.

¶ 13 The trial court acknowledged that McClure and Lopez lived together for about thirteen and a half years, that they had joint

banking and credit accounts and jointly owned property, and that McClure named Lopez as the beneficiary on two life insurance policies. These facts, the court concluded, weighed in favor of a common law marriage. However, the court did not agree that McClure and Lopez had a reputation in the community as spouses, that they shared symbols of commitment, or that they referred to each other as spouses.

¶ 14 As to the couple's reputation in the community, the court found that there were credible witnesses on either side that "testif[ied] to the couple being reputed . . . as married or not married." Indeed, Lopez presented witnesses who said they regarded the couple as married, while Moore presented other witnesses who testified to the contrary. The court concluded that, "in the totality of the circumstances," the evidence regarding the couple's reputation was inconclusive and for that reason weighed against a finding of a common law marriage.

¶ 15 As to shared symbols of commitment, the court remarked that there was no evidence of a marriage ceremony, a celebration of marriage, or any anniversary celebrations. The court discounted Lopez's evidence of gifts, noting that the jewelry box and preprinted

8

card referring to "My Husband" contained no identifying information and that, while Lopez apparently gave McClure a locket and a card referring to her as his wife, there was no evidence of any gifts in which *she'd* referred to *him* as her husband. The court also acknowledged Lopez's evidence of a set of matching rings but pointed to the absence of any "evidence . . . of a proposal, announcement, act, occasion, or event that would indicate that [they] were *wedding* or *marriage* rings as opposed to simply matching rings for a couple." And the court observed that photos of McClure and Lopez showed a "happy" couple but not necessarily a "married" one. Overall, the court found this factor to weigh heavily against a common law marriage finding; it explained, quoting *Hogsett*, ¶ 3, that it "place[d] great weight on the fact that there [was] no reliable evidence of symbols of commitment demonstrating a '*mutual consent* or *agreement* of the couple to enter the legal and social institution of marriage'" despite their more than thirteen years together.

¶ 16    And as to references to one another as spouses, the court found the evidence "conflicting and unclear." The court noted that much of the evidence Lopez presented on this issue, aside from his

own testimony, was "inadmissible pursuant to the Dead Man's Statute and as hearsay." (Lopez doesn't challenge those evidentiary rulings on appeal.) And the court found the admissible evidence was conflicting: a few witnesses said they heard McClure, on some occasions, refer to Lopez as her "husband," and McClure apparently referred to Lopez as a "spouse" or "husband" on some life insurance applications, but another witness said she heard McClure refer to Lopez as her "old man," not her "husband," and the court found it meaningful that McClure had "repeatedly represented to the federal government" in her tax returns "that she was not married, going so far as to state that her spouse was 'deceased.'"[2] Because the evidence on this factor was mixed, the court determined that it weighed against a finding of a common law marriage.

¶ 17     Because the trial court applied the correct legal standard and because its findings are reasonable and well supported by the evidence, we discern no clear error or abuse of discretion in its

---

[2] The trial court separately addressed the factor concerning joint tax filings. It found that the fact that McClure and Lopez both filed their taxes as head of household, which requires the filer to be unmarried, on its own "weigh[ed] heavily against" a finding of a common law marriage.

10

determination that McClure and Lopez were not common law married.  *See Blakeland Drive Invs.*, ¶ 28; *Marriage of Badawiyeh*, ¶ 9.  Indeed, where, as here, the evidence is conflicting, we "may not substitute [our] conclusions for those of the trial court merely because there may be credible evidence supporting a different result."  *Blakeland Drive Invs.*, ¶ 28 (quoting *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008)).

### III.    Attorney-Client Privilege

¶ 18    Lopez also contends that the trial court erred by allowing the discovery and the admission of evidence concerning the draft Cohabitation Agreement, as such evidence was protected by the attorney-client privilege.  We conclude that any error was harmless.

¶ 19    We review rulings on the discoverability and admissibility of evidence for an abuse of discretion.  *Affinity Colo., LLC v. Kissinger & Fellman, P.C.*, 2019 COA 147, ¶ 23; *Hodge v. Matrix Grp., Inc.*, 2022 COA 4, ¶ 12.  This same standard also applies to decisions regarding the attorney-client privilege.  *Affinity Colo.*, ¶ 23.

¶ 20    However, an error is not grounds for reversal if it is harmless.  *In re Estate of Gonzalez*, 2024 COA 63, ¶ 40.  We will reverse a judgment only if an error affected the parties' substantial rights.

11

*Id.*; *see also* C.R.C.P. 61.  "An error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'"  *Gonzalez*, ¶ 40 (quoting *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010)).

¶ 21    The attorney-client privilege and Colorado Rule of Professional Conduct 1.6 both ensure client-lawyer confidentiality.  *In re Estate of Rabin*, 2020 CO 77, ¶ 29.  The protections of both provisions survive the death of the client.  *Id.*; *see also* Colo. RPC 1.9(c)(2) ("A lawyer who has formerly represented a client in a matter . . . shall not thereafter . . . reveal information relating to the representation except as these Rules would permit or require . . . .").

¶ 22    However, there are several exceptions to the application of these provisions.  *Wesp v. Everson*, 33 P.3d 191, 200 (Colo. 2001). One of those is the testamentary exception, which "permits an attorney who writes a will to testify, after the testator's death, about attorney-client communications related to the execution and validity of the will."  *Id.* at 201.  Courts have applied this exception to allow attorneys to reveal otherwise privileged information that is necessary for administering the testator's estate, *see Rabin*, ¶ 42, or

12

that affects the validity of the testator's will, *see Denver Nat'l Bank v. McLagan*, 298 P.2d 386, 388 (Colo. 1956).  In doing so, the courts have reasoned that such disclosures serve "the exception's purpose of furthering the testator's intent."  *Wesp*, 33 P.3d at 201.

¶ 23    The trial court applied this exception, concluding that the draft Cohabitation Agreement functioned as a "quasi-testamentary instrument" insofar as it purported to delineate the disposition of McClure's and Lopez's joint and separate property.  The court also reasoned that applying the exception "would likely further [McClure's] testamentary intent."

¶ 24    But to date, the published decisions addressing the testamentary exception have applied it only in the context of testamentary instruments, like wills.  *See, e.g.*, *In re Estate of Ashworth*, 2024 CO 39, ¶¶ 14-15; *Wesp*, 33 P.3d at 200-01; *Denver Nat'l Bank*, 298 P.2d at 388; *In re Shapter's Estate*, 85 P. 688, 691 (Colo. 1905), *superseded by statute*, Ch. 251, sec. 1, 1907 Colo. Sess. Laws 629.  Thus, it's not clear that the exception would apply to instruments like the draft Cohabitation Agreement that don't establish the transfer of property rights upon death and thus aren't testamentary in nature — or at most are, as the trial court

13

described it, "quasi-testamentary" in nature. *See generally* § 15-10-201(59), C.R.S. 2024 (defining a "will" to include certain "testamentary instrument[s]"); *Taylor v. Wilder*, 165 P. 766, 767-68 (Colo. 1917) (explaining the difference between contracts that transfer property rights during a party's lifetime and testamentary instruments that transfer such rights upon the party's death).

¶ 25 But regardless of whether the court erred by allowing the discovery and admission of evidence relating to the agreement, we conclude that any such error was harmless because the court made clear that it would've reached the same conclusion on the common law marriage issue even without the evidence.

¶ 26 In its assessment of the common law marriage factors, the court cited the challenged evidence only once. And in that one instance, the court stated that "[e]ven if [it] did not consider [McClure's attorney's] testimony and [the draft Cohabitation Agreement], the record evidence of [McClure's and Lopez's] references/labels for one another fails to support a finding that the couple called *each other* husband and wife."

¶ 27 It is clear, therefore, that any error in the court's rulings on the discoverability and admissibility of the challenged evidence

14

didn't substantially influence the outcome of the case or impair the basic fairness of the proceeding. *See Gonzalez*, ¶ 40; *see also People v. Thompson*, 950 P.2d 608, 613 (Colo. App. 1997) (concluding that any error in admitting privileged evidence was harmless under the circumstances of the case).

## IV. Appointment of the Personal Representative

¶ 28 Finally, Lopez contends that the trial court erred in appointing Moore as personal representative of McClure's estate because she didn't have priority for the appointment. We decline to consider this issue, as Lopez didn't preserve it for appeal.

¶ 29 In civil cases, we generally don't address issues that weren't preserved for appeal. *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50. We don't require "talismanic language" to preserve an issue for appeal. *Id.* (quoting *In re Estate of Owens*, 2017 COA 53, ¶ 21). Instead, "[i]f a party 'presented to the trial court the sum and substance of the argument it . . . makes on appeal, we consider that argument properly preserved.'" *Id.* (quoting *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010)).

¶ 30 Lopez argues that the trial court erred in selecting Moore, who serves as guardian for McClure's adult child, as the personal

15

representative. He suggests that the court instead should've appointed the child's conservator.

¶ 31 However, Lopez didn't raise this argument at the trial level. While Lopez, in his response to Moore's petition, asked to be appointed as the personal representative, he didn't argue that Moore should *not* be appointed because she didn't have priority or because someone else (other than him) should be appointed. Nor did he make any such arguments after the court rejected his common law marriage claim and indicated that, in his absence, Moore had priority for appointment as the personal representative. Thus, the issue is not preserved.

## V. Attorney Fees

¶ 32 Lastly, we reject Moore's contention that Lopez's appeal is frivolous and that she is therefore entitled to attorney fees under C.A.R. 38(b) and section 13-17-102, C.R.S. 2024.

¶ 33 "An appeal may be either frivolous as filed or frivolous as argued." *Calvert v. Mayberry*, 2019 CO 23, ¶ 45. An appeal is frivolous as filed if the judgment below was plainly correct and the legal authority is clearly contrary to the appellant's position, such that "there are no legitimately appealable issues." *Id.* And an

appeal is frivolous as argued if, even if there may be legitimately appealable issues, the appellant doesn't present "a coherent assertion of error, supported by legal authority," to support them. *Id.* (quoting *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006)).

¶ 34    We conclude that, although Lopez's arguments are ultimately unsuccessful, his appeal is not frivolous.  First, the appeal is not frivolous as filed, as the issues were legitimately appealable, particularly as to the trial court's common law marriage and attorney-client privilege determinations.  And second, the appeal is not frivolous as argued, as Lopez presented coherent arguments supported by legal authority and citations to the record.

¶ 35    Accordingly, an award of attorney fees is not warranted.

## VI.    Disposition

¶ 36    The orders are affirmed.

JUDGE DUNN and JUDGE NAVARRO concur.

17